222 N.J. Super. 403 (1988)
537 A.2d 306
PATRICIA CAPANEAR, FORMERLY KNOWN AS PATRICIA SALZANO, PLAINTIFF-RESPONDENT,
v.
THOMAS SALZANO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 1, 1987.
Decided February 2, 1988.
*404 Before Judges MICHELS and GAYNOR.
Richard W. Vallario, attorney for appellant.
Mandelbaum, Salsburg, Gold, Lazris, Discenza & Steinberg, attorneys for respondent (Lynne Strober-Lovett, on the brief).
The opinion of the court was delivered by GAYNOR, J.A.D.
In this matrimonial action, defendant appeals from the denial of his post-judgment motion to reform a ten-year old separation agreement so as to effectuate the asserted intention of the parties concerning the distribution of realty. It is contended that the Family Part judge failed to interpret the agreement in a manner which would give effect to the logical intent of the *405 parties considering all of the attendant circumstances at the time of its execution. Alternatively, defendant urges that, in view of the trial court's perceived difficulty in resolving the factual status of the claim, it erred in deciding the motion without conducting an evidentiary hearing. We agree with the trial judge's conclusion that defendant failed to demonstrate by clear and convincing evidence that reformation of the agreement was appropriate and, although not considered below, we also conclude that defendant's application was properly dismissed as being time-barred pursuant to R. 4:50-2. See Isko, et als. v. Planning Bd. of Tp. of Livingston, et als., 51 N.J. 162, 175 (1968).
The property settlement agreement entered into by the parties in January 1977 provides in pertinent part:
3. The Husband shall pay support for the two minor children in the following manner:
a) While it is understood and agreed that the Wife presently resides rent free at 102 Franklin Street, Belleville, New Jersey, the premises is owned by a corporation of which the Husband is a shareholder and whereas it is also understood that the Husband represents at the time of the execution of this Agreement that he is unemployed ... the extent of the Husband's obligations for said support is satisfied by the free rental afforded by the landlord of the premises in which the Wife resides.
* * * * * * * *
4) The Wife shall keep and the Husband shall release any and all interest in all household furnishings as well as her personal belongings and all bank accounts, stocks and real estate in her name. The Husband shall keep and the Wife shall release any and all interest in Husband's personal belongings and in any real estate the Husband owns in a corporation known as Set Point, Inc. Both the Husband and Wife shall execute the documents necessary to effectuate the aforesaid intentions.
* * * * * * * *
5) The Husband shall indemnify and hold harmless the Wife from any and all notes, mortgages concerning Set Point Corporation and the lien of Midlantic Bank on the Husband's car and any and all other liens against the Husband.
* * * * * * * *
11) This Agreement contains the entire understanding of the parties and there are no representations, warranties, covenants, or undertakings other than those expressly set forth herein.
*406 In answers to interrogatories propounded during the divorce proceedings, plaintiff initially stated that she had no known interest in real property but subsequently modified that response to indicate a one-sixth interest in real estate located in Monroe Township. Defendant had certified in his answers that the Franklin Street property referred to in the agreement was owned by Salzano Realty Co. and that he held a 25% ownership interest in that corporation, with his two brothers and sister being the owners of the remaining 75% interest. The Franklin Street property was occupied by plaintiff until April 30, 1982 when she vacated the premises in response to an action instituted by defendant and his siblings to obtain possession of the property.
In support of the subject motion to compel plaintiff to convey her interest in this property to him, defendant alleged that two mistakes were made in the preparation of the agreement. One was the error in identifying the corporation in paragraph 4 as Set Point, Inc. instead of Salzano Realty Co., and the other mistake was that the Franklin Street property was not owned by a corporation but by defendant, his brothers and sister and their respective spouses. A certification by defendant's former attorney acknowledged that the agreement "incorrectly stated that the real estate owned by the husband was in a corporate name, specifically `Set Point, Inc.,'" and that at the time the agreement was negotiated the parties were aware that they owned 25% of the subject property. The attorney annexed a copy of a letter sent by him in April 1976 to plaintiff's attorney setting forth that defendant was to keep the real estate he held in a corporate name and that the wife would also release her interest in the corporation known as Set Point. It was further pointed out by defendant that plaintiff did not participate in a refinancing agreement terminating a foreclosure action against the property, nor did she assert an ownership interest as a defense in the eviction suit.
Plaintiff noted that the Franklin Street property had been conveyed by defendant's parents to their four children and their *407 respective spouses. While the grantee in the deed originally was Salzano Realty Co., the company name was crossed out and the names of the individual grantees inserted. Plaintiff further claimed that the property had been omitted from the agreement deliberately because defendant did not want any attention drawn to it since it was under foreclosure. Her affidavit also included the statement that defendant had agreed that she would receive one-eighth of the net proceeds of a sale of the property. In opposing defendant's motion, plaintiff emphasized that the agreement required defendant to release any interest in real estate in her name and contained no provision calling for the conveyance of her interest in the Franklin Street property to defendant.
In denying defendant's application for reformation of the agreement, the trial judge observed:
For every factual presentation that mitigates her being on the deed there is a counter argument that leaves it very much in equilibrium. And I find that as a matter of fact that argument is in equilibrium. I am not unconvinced by what you say. I am not unconvinced by what they say. The agreement says nothing about transferring her interest. In fact it says just the reverse. Property in her name is going to be in her name period. And it just doesn't come off that deed. For that reason I am denying your motion.
While marital property settlement agreements are enforceable in this State only insofar as they are just and equitable, Faherty v. Faherty, 97 N.J. 99, 105 (1984), general contract principles govern their judicial construction and alteration. See Dworkin v. Dworkin, 217 N.J. Super. 518, 524 (App. Div. 1987); Davidson v. Davidson, 194 N.J. Super. 547, 553-554 (Ch.Div. 1984). Thus, a matrimonial agreement may be reformed when, through a common mistake or the mistake of one party accompanied by the fraudulent knowledge of the other, it does not express the real agreement of the parties. Brodzinsky v. Pulek, 75 N.J. Super. 40, 48 (App.Div. 1962), certif. den., 38 N.J. 304 (1962). However, where reformation is premised upon mistake in the preparation of the agreement, "there must be clear and convincing proof `that the contract in its reformed, and not original, form is the one that the contracting parties *408 understood and meant it to be; and as, in fact, it was but for the alleged mistake in its drafting.'" Id., quoting from Kuller v. Fire Ass'n of Philadelphia, 124 N.J. Eq. 473, 475 (Ch.Div. 1938). "`Clear and convincing' evidence should produce in the mind of the trier of the fact a firm belief or conviction as to the truth of the allegations sought to be established." Aiello v. Knoll Golf Club, 64 N.J. Super. 156, 162 (App.Div. 1960).
Here, it is evident that defendant did not meet this burden. As indicated by the motion judge, defendant's proofs were countered by those offered by plaintiff, leaving the matter "in equilibrium." We cannot say that the proofs before the court required a different conclusion. On the contrary, we are satisfied that the findings and conclusion of the motion judge were sufficiently supported by competent and reasonably credible evidence as to be binding on appeal. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-484 (1974).
Although there was no need for the motion judge to consider the applicability of R. 4:50, it is well established that relief from the equitable distribution provisions of agreements which are incorporated in divorce judgments is subject to the standards of this rule. Dworkin v. Dworkin, 217 N.J. Super. at 524; Edgerton v. Edgerton, 203 N.J. Super. 160, 193 (App.Div. 1985). See also Palko v. Palko, 73 N.J. 395, 397-398 (1977); Ganther v. Ganther, 153 N.J. Super. 226, 231 (App.Div. 1977); Berlin v. Berlin, 200 N.J. Super. 275, 279-280 (Ch.Div. 1984). While under R. 4:50-1, relief from the operation of a final judgment may be accorded a party because of mistake, application therefor must be made within one year of the entry of the judgment. R. 4:50-2. The rule reflects the principle of finality of judgments. "[I]t dictates that litigation must eventually be ended and that at some point the prevailing party be allowed to rely confidently on the inviolability of his judgment." Hodgson v. Applegate, 31 N.J. 29, 43 (1959).
As defendant sought relief from the judgment because of asserted mistakes therein, he was bound by the time limitation *409 of R. 4:50-2. A reopening of the judgment some ten years after its entry to reform the incorporated agreement not only would have violated the rule but the policy of finality which underlies the prescribed time limitations also would have been defeated. Even if defendant's application was considered under subsection (f), it was not made within a reasonable time nor does it appear that enforcement of the judgment as entered would be unjust or inequitable. See Quagliato v. Bodner, 115 N.J. Super. 133, 138 (App.Div. 1971). The applicability of R. 4:50-2 thus would preclude the requested plenary hearing.
The order entered April 15, 1987 is therefore affirmed.