245 N.J. Super. 561 (1991)
586 A.2d 318
MARIA CONFORTI, (FORMERLY GULIADIS), PLAINTIFF-APPELLANT,
v.
GEORGE GULIADIS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted January 7, 1991.
Decided February 5, 1991.
Before Judges PETRELLA, MUIR, Jr. and BROCHIN.
R.M. James Ruscick, attorney for appellant.
*562 Respondent's brief was suppressed.
The opinion of the court was delivered by BROCHIN, J.A.D.
Plaintiff Maria Conforti and defendant George Guliadis were married December 30, 1979. Their only child, a daughter, was born January 29, 1983. They were divorced by a judgment entered June 25, 1984. The subject of their present dispute is a lease between them which they entered into to implement their property settlement agreement. The property settlement agreement was incorporated into their divorce judgment.
In that agreement, each party waived any alimony claim against the other. As child support, Mr. Guliadis agreed to pay $25 a week into a trust account in the name of their daughter. All of the money in the account was to be paid to her when she became eighteen years of age or upon the occurrence of any one of a number of specified events. Ms. Conforti asserts that for the support of herself and her daughter, she relied primarily upon the equitable distribution provisions of their property settlement agreement.
The parties' agreement recites that they owned a business, Garden State Deli, and the building in which the business was located. Ms. Conforti agreed to convey all of her interest in the building to Mr. Guliadis, and he agreed to release all of his interest in the business to her. Since Ms. Conforti's business would be located in Mr. Guliadis's building, he agreed "to execute a Lease to the store premises ... in favor of the Wife for a term of fifteen years with a five year option." Ms. Conforti also agreed to pay her husband $20,000, presumably to compensate for the difference between the value of the business and that of the building.
The parties executed a lease dated the same day as their property settlement agreement. A right of first refusal contained in a rider to the lease created the problem which has produced this law suit. The provision reads as follows:

*563 2. It is further agreed that this Lease shall be subject to termination at any time in the event that Lessor shall desire to sell the demised premises and shall have a bona fide offer for the purchase thereof. In such event, Lessee shall have the option for a period of [blank] tion [sic] from Lessor to meet the terms and conditions of such offer. If Lessee fails to accept the terms and conditions of sale during the said [blank] [sic] day period, the option shall be of no further force and Lessor shall be free thereafter to sell the premises to third persons.
Mr. Guliadis's attorney sent Ms. Conforti a letter, dated May 19, 1989, informing her that Mr. Guliadis had received a bona fide offer for sale of the building in which her delicatessen business was located. The letter warned her that if she failed to exercise her right of first refusal, the building would be sold and her lease would be terminated.
On August 24, 1989, Ms. Conforti filed a petition and order to show cause. She sought, among other things, reformation of the lease to delete the provision of the right of first refusal which purports to terminate the lease upon sale of the building. The substance of her allegations is that the inclusion of that provision was inconsistent with the terms of the property settlement agreement between her and her former husband and that she signed the lease in its present form as the result of mistake on her part and fraud on his. Mr. Guliadis filed an opposing certification which denied Ms. Conforti's assertions and stated that the lease as executed, including the provision for termination of the lease on sale of the building, was entirely in accordance with their intended agreement.
After an exchange of legal memoranda and oral argument, the trial court entered an order which denied Ms. Conforti's application for a plenary hearing and declared that in the event she failed to exercise her right of first refusal within 60 days, Mr. Guliadis would have the right to transfer the property free of the lease. The trial judge viewed Ms. Conforti's application either as a motion pursuant to R. 4:50-1(f)[1] for relief from the *564 judgment of divorce or as a complaint for equitable reformation of the lease. He ruled that relief would not be granted under R. 4:50-1(f) because the five years that had elapsed since the lease was executed was more than the "reasonable time" permitted under the rule. He declined to accord Ms. Conforti the opportunity to prove her claim for reformation at a plenary hearing because her certifications did not constitute the "clear and convincing proof" which is a prerequisite for equitable reformation.
In his oral opinion, the trial judge expressly considered the question whether the sufficiency of Ms. Conforti's proofs was a matter which could properly be decided on the basis of the parties' certifications rather than on the basis of oral testimony presented after a plenary hearing. For his conclusion that the issue could be decided on the papers before him, the trial judge relied on Capanear v. Salzano, 222 N.J. Super. 403, 537 A.2d 306 (App.Div. 1988).
In Capanear, a divorced husband moved to reform a ten-year old property settlement agreement so as to require his former wife to convey some real estate to him which he claimed, and she denied, they had intended to allocate to him at the time of their settlement. The trial judge decided the motion on the basis of the parties' conflicting affidavits. He said:
For every factual presentation that mitigates her being on the deed there is a counter argument that leaves it very much in equilibrium.... I am not unconvinced by what you say. I am not unconvinced by what they say.... For that reason, I am denying your motion.
Id. at 407, 537 A.2d 306.
In affirming that decision, this court's opinion recognized that "a matrimonial agreement may be reformed when, through a common mistake or the mistake of one party accompanied by the fraudulent knowledge of the other, it does not express the real agreement of the parties." Capanear, 222 N.J. Super. at *565 407, 537 A.2d 306. The court noted, however, that "clear and convincing proof" was required to demonstrate that the contract in its reformed, and not original, form is the one that the contracting parties intended. Id. at 407-408, 537 A.2d 306. The court then stated its holding as follows:
Here, it is evident that defendant did not meet this burden. As indicated by the motion judge, defendant's proofs were countered by those offered by plaintiff, leaving the matter "in equilibrium." We cannot say that the proofs before the court required a different conclusion. On the contrary, we are satisfied that the findings and conclusion of the motion judge were sufficiently supported by competent and reasonably credible evidence as to be binding on appeal. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-484 [323 A.2d 495] (1974).
Id. at 408, 537 A.2d 306.
The trial judge in the present case interpreted this holding as authorizing him to weigh the parties' proofs on the basis of their certifications, without hearing oral testimony. We agree that the opinion in Capanear supports that interpretation. However, in our view, a holding which authorizes a trial court to decide contested issues of material fact on the basis of conflicting affidavits, without considering the demeanor of witnesses, is contrary to fundamental principles of our legal practice. We therefore respectfully decline to follow it.
A motion for summary judgment may be granted only if the written materials upon which the movant relies "show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2. Justice Brennan's classic statement in Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 110 A.2d 24 (1954), reversing the grant of a summary judgment motion, is still authoritative:
We consider that the trial judge improperly decided from conflicting proofs the material fact of Bankers' participation in the allegedly fraudulent scheme and thus misconceived the judicial function in the summary judgment procedure. The role of the judge in that procedure is to determine whether there is a genuine issue as to a material fact, but not to decide the issue if he finds it to exist. [Citation omitted.]
Issues of credibility are ordinarily for the trier of fact, and the judge does not function as a trier of fact in determining a motion for summary judgment. *566 Where the judge questions the inherent credibility of the matter offered in opposition there are other alternatives to the rejection of the matter and the grant of the motion.
Id. at 73, 75, 110 A.2d 24. See Shanley & Fisher, P.C. v. Sisselman, 215 N.J. Super. 200, 211-215, 521 A.2d 872 (App. Div. 1987).
Of course, neither in the present case nor in Capanear did the motion judge characterize his disposition of the matter before him as the grant of a motion for summary judgment. But the strictures of Judson, admonishing motion judges not to decide genuinely contested issues of material fact on affidavits, are not based on the fact that the procedure which the Court was reviewing in that case was a motion for summary judgment. Rather, motions for summary judgment are restricted to cases where material facts are not genuinely disputed because the summary judgment procedure is no exception to the general principle that contested issues of fact must be decided on the basis of oral testimony, delivered under oath before the trier of fact, and subject to cross-examination. Our observations in Fusco v. Fusco, 186 N.J. Super. 321, 327, 452 A.2d 681 (App. Div. 1982), are pertinent here:
This ... decision obviously should not have been made on the basis of filed documents consisting of self-serving certifications by the parties, conflicting psychiatric reports, and an unseemly and irrelevant barrage of attorney certifications and inadmissible expressions of community sentiment. That it was so made without an evidential basis, without examination and cross-examination of lay and expert witnesses, and without a statement of reasons is untenable in the extreme.
In the present case, we do not dispute that in order for Ms. Conforti to prevail on her claim for reformation, she will have to prove her case by clear and convincing evidence. Trial of the case may show that the motion judge's skepticism about the likelihood of her ultimate success is well founded. But he is not entitled to dismiss the possibility that when he hears and observes the witnesses testifying in open court, under oath, and subject to cross-examination, he may believe Ms. Conforti and disbelieve Mr. Guliadis. In that event, absent some other defense, she will be entitled to a judgment. On the basis of the *567 papers which were presented to the motion judge, there was no justification for depriving her of the right to have her reformation claim tried.
With respect to Ms. Conforti's application under R. 4:50-1(f), we agree with motion judge that it was not brought within a reasonable time. Since her only viable claim for relief is a claim for reformation of a lease, her action should have been brought as a plenary suit in the Chancery Division, General Equity, rather than in the Family Part. See R. 5:1-2. The judgment appealed from is therefore reversed and the case is remanded to the Chancery Division, General Equity, for further proceedings not inconsistent with this opinion.
MUIR, Jr., J.A.D., dissenting.
I respectfully dissent. I would affirm relying, as did the trial judge, on Capanear v. Salzano, 222 N.J. Super. 403, 537 A.2d 306 (App.Div. 1988). Capanear is not factually distinguishable. Its tenets are both legally sound and applicable here. Sound judicial precedent should not be discarded.
The trial judge's ruling should be affirmed.
NOTES
[1] R. 4:50-1(f) authorizes relief from a final judgment or order for "any other reason [in addition to the reasons enumerated in the preceding clauses] justifying relief from the operation of the judgment or order." A motion for relief under R. 4:50-1(f) must be made within "a reasonable time."