608 A.2d 225

MARIA CONFORTI (FORMERLY GULIADIS), PLAINTIFF-
RESPONDENT, v. GEORGE GULIADIS, DEFENDANT-
APPELLANT.

Argued November 18, 1991—Decided June 23, 1992.

*Nicholas R. Doria* argued the cause for appellant (*Sassano & Doria,* attorneys).

*Vincent M. Salvatore* argued the cause for respondent.

The opinion of the Court is delivered by

HANDLER, J.

In conjunction with their impending divorce, George Guliadis and Maria Conforti (formerly Guliadis) entered into a property settlement agreement. The agreement included a lease that was executed separately. When the couple divorced, the property settlement agreement and accompanying lease were incorporated into the final divorce judgment. Five years after the divorce judgment, Conforti sought reformation of the lease, contending that it was based on mutual mistake and was unfair as written. This case requires the Court to determine the

standards that govern the enforceability of a lease executed as part of a property settlement agreement incorporated in a judgment of divorce. That determination requires consideration of whether those standards should be resolved by principles of matrimonial law applicable to the modification of judgments of divorce or principles of contract law applicable to the reformation of lease agreements.

I

Plaintiff Conforti and defendant Guliadis were married on December 30, 1979. Together they owned and operated a business, the Garden State Deli, at 1207 Anderson Avenue in Fort Lee. The couple also owned the building in which the business was located, a two-story structure with retail space at street level and two apartments on the second floor. The couple's only child, a daughter, was born just over three years after they were married.

Conforti and Guliadis were divorced by a judgment entered on June 25, 1984. Incorporated into the final divorce judgment was a property settlement agreement in which each party waived any alimony claim against the other. Pursuant to the agreement, Conforti transferred her interest in the building to Guliadis and Guliadis transferred his interest in the delicatessen to Conforti. In addition, Conforti paid $20,000 to Guliadis, apparently because the delicatessen was worth more than the building which housed it. Custody of the daughter was awarded to Conforti, and, as stipulated in the property settlement agreement, Guliadis pays twenty-five dollars per week in child support.

Paragraph 3C of the property settlement agreement provided that Guliadis would lease the retail space occupied by the delicatessen to Conforti for fifteen years, and that Conforti would receive a five-year option to renew. The agreement and the accompanying lease were signed on the same day.

A rider to the lease provided that Guliadis could terminate the lease if he sold the building. The rider also gave Conforti the right of first refusal. The rider provision stated:

2. It is further agreed that this Lease shall be subject to termination at any time in the event that Lessor shall desire to sell the demised premises and shall have a bona fide offer for the purchase thereof. In such event Lessee shall have the option for a period of _____ tion [sic] from Lessor to meet the terms and conditions of such offer. If Lessee fails to accept the terms and conditions of sale during the said _____ day period, [sic] the option shall be of no further force and Lessor shall be free to sell the premises to third persons.

On May 19, 1989, approximately five years after the parties signed the property settlement agreement and the accompanying lease, Guliadis's attorney sent Conforti a letter informing her that his client had received a *bona fide* offer of $850,000 to purchase the building. The letter warned Conforti that if she failed to execute her right of first refusal, Guliadis would sell the building and terminate her lease.

On August 24, 1989, Conforti filed a petition and order to show cause in the Chancery Division, Family Part. She sought, among other things, deletion of the provision in the rider that purports to terminate the lease upon sale of the building. She alleged that the termination provision was inconsistent with the property settlement agreement as a whole, that it was inserted as a result of mutual mistake, and that enforcing it would be unfair. In the alternative, she claimed that if Guliadis actually had intended the provision to read as it did, he induced her to agree to it through fraud. Guliadis filed a certification which denied Conforti's allegations. According to Guliadis, the termination provision accorded with the parties' intent, Conforti understood the provision and its implications, and the provision was consistent with the property settlement agreement read as a single unit.

The trial court denied Conforti's application for a plenary hearing. It declared that in the event that she failed to exercise her right of first refusal within sixty days, Guliadis would have the right to sell the building and terminate the lease. The court viewed Conforti's application as both a motion

pursuant to *Rule* 4:50–1(f) for relief from judgment of divorce and as a complaint for equitable reformation of the lease. It ruled that relief would not be granted under *Rule* 4:50–1(f) because the five years that had elapsed since the lease was executed were more than the "reasonable time" permitted under the Rule. The court denied Conforti a plenary hearing on her equitable claim because her certifications did not present the "clear and convincing proof" required for equitable reformation. The court concluded that the sufficiency of Conforti's proofs could be assessed solely on the basis of the parties' certifications and that no further taking of evidence was needed.

Conforti appealed from the trial court's denial of a plenary hearing and the Appellate Division reversed. 245 *N.J.Super.* 561, 586 *A.*2d 318 (1991). The Appellate Division did not dispute that Conforti would have to prove her case by clear and convincing evidence. *Id.* at 566, 586 *A.*2d 318. Conceding that Conforti's claim ultimately might fail, a majority of the Appellate Division said that the claim should not have been dismissed solely on the basis of the papers presented. *Id.* at 566–67, 586 *A.*2d 318. It explained that "a holding which authorizes a trial court to decide contested issues of material fact on the basis of conflicting affidavits, without considering the demeanor of witnesses, is contrary to fundamental principles of our legal system." *Id.* at 565, 586 *A.*2d 318. The dissenting judge agreed with the trial court that a plenary hearing was not required. 245 *N.J.Super.* at 567, 586 *A.*2d 318. The Appellate Division also unanimously agreed with the trial court that Conforti's application under *Rule* 4:50–1(f) had not been brought within a reasonable time. Having found that her only viable claim for relief was an equitable claim for reformation of the lease, the court remanded the case to the Chancery Division, General Equity, rather than to the Family Part where the case had originated.

Guliadis appealed as of right on the issue of whether a full evidentiary hearing is required to decide a motion for equitable

reformation of a lease that was executed as part of a property settlement agreement and which is incorporated into a final divorce judgment. We now hold that a hearing is required in those circumstances and that the adjudication of that issue should be undertaken by the Family Part of the Chancery Division.

## II

■ The equitable authority of courts to modify property distribution, alimony, and support orders issued in divorce cases is well established. We have recognized that marital property is distinctive, *Carr v. Carr*, 120 *N.J.* 336, 346–49, 576 *A.*2d 872 (1990), and that property settlement agreements entered into in anticipation of divorce reflect the unique nature of the marital enterprise. *Rothman v. Rothman*, 65 *N.J.* 219, 229, 320 *A.*2d 496 (1974); *Gibbons v. Gibbons*, 174 *N.J.Super.* 107, 112–13, 415 *A.*2d 1174 (App.Div.1980), *rev'd on other grounds*, 86 *N.J.* 515, 432 *A.*2d 80 (1982). Marital property settlement agreements "involve far more than economic factors" and must serve the strong public and statutory purpose of ensuring fairness and equity in the dissolution of marriages. *Rothman, supra,* 65 *N.J.* at 229, 320 *A.*2d 496; *see Peterson v. Peterson*, 85 *N.J.* 638, 644, 428 *A.*2d 1301 (1981). Even when a divorce order incorporates agreements reached privately between the parties, such orders can be modified "in light of all the facts" bearing on what is "equitable and fair." *Smith v. Smith*, 72 *N.J.* 350, 360, 371 *A.*2d 1 (1977). Thus, "contract principles have little place in the law of domestic relations." *Lepis v. Lepis*, 83 *N.J.* 139, 148, 416 *A.*2d 45 (1980).

■ In this case, although plaintiff seeks modification of what appears to be a standard lease for retail space, the lease was but one component of a much broader agreement encompassing a host of domestic issues that arose when Conforti and Guliadis ended their marriage. Consequently the lease must be viewed within the framework of the judicially-sanctioned alloca-

tion of marital property and cannot be viewed merely as a conventional property transaction. Equitable distribution of marital property is "intimately related to support," and "[t]he power to distribute property equitably should be exercised to relieve the strain of total reliance on support payments for financial security." *Id.* at 154–55, 416 *A.*2d 45; *see Smith, supra,* 72 *N.J.* at 359–60, 371 *A.*2d 1 (noting that the question of support is "inextricably interrelated with the question of equitable distribution," and that courts have "the utmost leeway and flexibility in determining what is just and equitable in making allocations of marital assets."); *cf. Innes v. Innes,* 117 *N.J.* 496, 505, 569 *A.*2d 770 (1990) (construing *N.J.S.A.* 2A:34–23, as amended, *L.* 1988, *c.* 153, § 3, to mean that retirement benefits treated as an asset for purposes of equitable distribution are not to be treated as income for purposes of determining alimony). Against that background we look initially to whether the lease as written conforms with the broad intention of the parties in effectuating the equitable distribution of their marital property. We look also to whether the strict application of the lease is fair and equitable.

In *Vasconi v. Guardian Life Insurance Co.,* 124 *N.J.* 338, 590 *A.*2d 1161 (1981), a couple had entered into a comprehensive settlement to distribute their marital property equitably, and that settlement was incorporated into a final judgment of divorce. The former husband died shortly after the divorce became final, neglecting to alter a life-insurance policy to remove his former wife as a beneficiary before he died. Although the property settlement agreement did not mention the disposition of the insurance proceeds, the agreement purported to settle "all questions pertaining to their respective interests in distribution of the marital assets." *Id.* at 346, 590 *A.*2d 1161. The Court reasoned that under the circumstances "the proceeds of a life-insurance policy subject to the lifetime control of one spouse should ordinarily be considered as encompassed within the terms of the settlement agreement." *Ibid.* "In the procedural posture of this case," said the Court, "we must assume

that it would be unfair and unjust for the former wife to retain this property." *Id.* at 347, 590 *A.*2d 1161. Thus, the basic issue in *Vasconi,* as in this case, was whether the court could look beyond any single document, there the insurance policy, here the lease, to ascertain the overall intent of two divorcing parties to ensure that enforcing that separate document according to its terms conformed with the intent of the parties and was fair and equitable in light of the comprehensive property settlement between them. The Court held that "the law is fully capable of effectuating marital distributions 'derived from notions of fairness, common decency, and good faith.'" *Id.* at 348, 590 *A.*2d 1161 (quoting *Carr, supra,* 120 *N.J.* at 349, 576 *A.*2d 872). It remanded the matter for an adjudication of those ultimate issues.

Conforti's complaint fairly raises the issues of whether the challenged provision in the rider of the lease can be reconciled with the dominant intent of the property settlement agreement and whether its enforcement would be fair and equitable. Thus, it is of some significance that Conforti paid $20,000 for the delicatessen, generating the inference that *both* parties regarded the building as having little value. Although Conforti contends that the rider provision as such was not intended to be a part of the lease even though included, her claims suggest that if it was intentionally included, it could not have been understood by the parties to pose an insurmountable barrier to continuing her business. Conforti asserts that it is now impossible for her to acquire the building or to relocate elsewhere in the neighborhood, and that she will be put out of business and unable to make a living if her former husband sells the building and her lease is terminated pursuant to its literal terms. Further, if forced to move elsewhere, she would lose the good will she has built up through years of operation at one location. In sum, Conforti's claim, fairly read, indicates that the parties never contemplated that the lease would work a forfeiture of her leasehold interest, and, in light of principles of fairness and equity, that the rider's provision should not be enforced to

deprive her of the primary source of support of herself and her daughter.

The disputed facts also may implicate issues concerning alimony and support. Divorce orders that relate to alimony and support generally can be modified in response to changed circumstances, "regardless of their source," and regardless of their foreseeability. *Lepis,* 83 *N.J.* at 152, 416 *A.*2d 45. Modification will not be granted, however, if the parties have expressly provided for the circumstances that have changed. *Innes, supra,* 117 *N.J.* at 504, 569 *A.*2d 770 (dealing with specific provision in settlement agreement that encompassed both equitable distribution of marital assets and alimony).

The property-settlement agreement between Conforti and Guliadis subsumed all alimony and support obligations with the exception of nominal monthly support for the daughter. Under some circumstances, the interrelationship between the distribution of marital assets and alimony and support obligations can be significant in resolving the enforceability of property-settlement agreements. *See Smith, supra,* 72 *N.J.* at 359–60, 371 *A.*2d 1 (issues of alimony and support can become "inextricably interrelated with the question of equitable distribution"); *see also Carr, supra,* 120 *N.J.* at 342, 576 *A.*2d 872 (citing *Graf v. Graf,* 208 *N.J.Super.* 240, 505 *A.*2d 207 (Ch.Div.1985) (noting that marital assets may be sold to ensure maintenance of wife and children)); Supreme Court Committee on Matrimonial Litigation, Phase two, Final Report, 81 *N.J.L.J.Supp.* 1 (July 16, 1981) (indicating that equitable distribution of marital property may be modified to reflect changes in living expenses). Conforti asserts that equitable distribution and alimony were "interdependent" or "intertwined" in the property-settlement agreement. Her factual contentions, though disputed by Guliadis, could be understood to suggest that material circumstances have changed drastically, making it impossible for her to buy the building or to find another suitable location for her business, and that enforcement of the termination provision of the

lease in light of those changed circumstances would leave her with virtually no resources at all. *See Lepis, supra,* 83 *N.J.* at 153 n. 6, 416 *A.*2d 45. Because we cannot anticipate whether resolution of the issue of the termination provision will implicate claims for alimony and support, it is difficult, on this record, to fully assess Conforti's factual contentions under the doctrine of changed circumstances. *Lepis, supra,* 83 *N.J.* at 149, 416 *A.*2d 45.

Conforti also claims that if the contract were interpreted as contemplating the possibility that she be left without a place to run her delicatessen, then the contract either was based on mutual mistake or was executed through fraud. The Appellate Division mistakenly states that Conforti claims that she "signed the lease in its present form as a result of mistake on her part and fraud on his." 245 *N.J.Super.* at 563, 586 *A.*2d 318. A fair reading of the plaintiff's petition reveals that she claims not unilateral mistake on her part but mutual mistake on the part of both parties. For example, she states that the agreement "was never to have included a termination provision!" and that "there was obviously some mistake made in the drafting of para. 2 of the rider to the Lease...." Guliadis denies making any mistake and insists that both parties made fully informed decisions on all aspects of the agreement.

■ In evaluating claims of mutual mistake and fraud, a court necessarily must look beyond the four corners of the contract. *See Bronco Petrol, Inc. v. Epstein,* 115 *N.J.* 599, 608–09, 560 *A.*2d 655 (1989); *St. Pius X House of Retreats v. Diocese of Camden,* 88 *N.J.* 571, 579, 443 *A.*2d 1052 (1982); *Jewish Center of Sussex Co. v. Whale,* 86 *N.J.* 619, 626, 432 *A.*2d 521 (1981). Thus, Conforti's claims about the nature of the agreement and the extent to which it is founded on mistake or fraud present issues of fact, as do her claims that terminating her lease would severely penalize her and her daughter and award Guliadis a disproportionate share of the marital assets.

The trial court and the dissent in the Appellate Division relied on *Capanear v. Salzano*, 222 *N.J.Super.* 403, 537 *A.*2d 306 (App.Div.1988), to deny the claim for a plenary hearing. In that case a divorced husband moved to reform a ten-year-old property settlement agreement to require his former wife to convey some real estate to him which he claimed they had intended to allocate to him at the time of their settlement. The wife disputed the husband's factual account. The trial court decided the motion solely on the basis of the parties' conflicting affidavits. Noting that each party's allegations contradicted the other's, the trial court in *Capanear* found the claim to be in a state of "equilibrium" and therefore denied the husband's motion. In affirming the *Capanear* trial court, the Appellate Division said that "clear and convincing proof" was required to justify reformation of a contract, and concluded that the husband had not met his burden. 222 *N.J.Super.* at 407–08, 537 *A.*2d 306. The conclusions of the trial judge, said the Appellate Division in *Capanear*, "were sufficiently supported by competent and reasonably credible evidence as to be binding on appeal." *Id.* at 408, 537 *A.*2d 306. We decline to follow *Capanear* in this case.

Conforti's claims fairly pose factual issues relating to the intent of the parties in reaching their property settlement agreement, the degree to which strict enforcement of the rider provision would be inequitable and unfair, and whether the property settlement agreement implicates concerns of alimony and child support, as well as the existence of mutual mistake and fraud. Her certifications of fact should not be read restrictively or literally to determine whether alone they spell out a claim for relief, nor should their probative worth be neutralized or discounted by the opposing certifications. Rather, they must be examined with an appreciation that if supported by competent evidence they would establish a *prima facie* cause of action. We thus agree with the majority of the Appellate Division that the material facts presented by the conflicting affidavits are sufficiently in dispute to warrant a plenary

hearing. We are satisfied, moreover, that all of the issues raised by the claims and defenses of the parties are principally related to a matrimonial cause of action.

### III

We conclude that plaintiff has presented an equitable claim for reformation of the lease raising factual issues that should be adjudicated at a hearing and, further, that the claim is made in the context of the judgment of divorce incorporating the property-settlement agreement of the parties. Accordingly, we affirm and modify the judgment below and remand the case to the Family Part of the Chancery Division.

*For modification and affirmance; remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—none.