279 N.J. Super. 89 (1995)
652 A.2d 219
JACQUELINE MASSAR, PLAINTIFF-APPELLANT,
v.
CYRIL J. MASSAR, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 1994.
Decided January 26, 1995.
*91 Before Judges PETRELLA, BROCHIN[1] and CUFF.
Lizanne J. Ceconi argued the cause for appellant (Coviello & Ceconi, attorneys; Ms. Ceconi, on the brief).
Henry J. Daaleman argued the cause for respondent (Mr. Daaleman, on the brief).
The opinion of the court was delivered by CUFF, J.S.C. (temporarily assigned).
This appeal arises from an order enforcing an agreement between a husband and wife which limited the grounds for a complaint for divorce to eighteen months continuous separation.
This is the second marriage for both parties. Prior to their marriage on November 25, 1988, Jacqueline Massar and Cyril Massar signed a prenuptial agreement. In April 1993, the marriage had deteriorated to the point that the parties discussed separation and eventual divorce. In an agreement signed April 30, 1993, Mr. Massar agreed to vacate the marital home, and Mrs. Massar agreed not to seek termination of the marriage for any reason other than eighteen months continuous separation. Pursuant to this agreement, Mr. Massar moved out of the marital home.
*92 However, contrary to the agreement, on October 1, 1993, Mrs. Massar filed a complaint for divorce on the grounds of extreme cruelty. Mr. Massar filed a motion to dismiss the complaint and to enforce the prenuptial agreement. After oral argument, Hon. Thomas Dilts, J.S.C. upheld the agreement and dismissed the complaint. He also denied without prejudice Mr. Massar's motion to enforce the prenuptial agreement citing the need for a plenary hearing. Finally, he ruled that Mrs. Massar could file a complaint for separate maintenance pursuant to N.J.S.A. 2A:34-24. An order reflecting these rulings was entered on December 14, 1993. Mrs. Massar appeals from that portion of the order enforcing the agreement to seek a divorce solely on "no fault" grounds.
In enforcing this agreement, Judge Dilts found that the agreement was clear, unequivocal and supported by consideration. He also found that Mrs. Massar had failed to present facts which would lead him to conclude that the agreement was executed under duress. At most, she submitted facts to support that she wanted Mr. Massar out of the house. Furthermore, Mrs. Massar was represented by an attorney who was representing solely her interests. Moreover, Judge Dilts found that public policy did not prohibit such agreements. In fact, he concluded that public policy requires that agreements which restrict the grounds on which a divorce shall be obtained to the no-fault eighteen months continuous separation should be recognized. He reasoned that such an agreement should be encouraged by the State since it can give a couple a period of time to assess their relationship and determine whether a reconciliation is possible.
On appeal, Mrs. Massar argues that a complaint for divorce on the grounds of extreme cruelty does not violate the intent of the agreement. She further argues that the agreement violates public policy and is unenforceable. Finally, she argues that a plenary hearing was required. We disagree and affirm the order entered by Judge Dilts substantially for the reasons set forth in his oral decision of December 10, 1993 as supplemented by his letter *93 opinion dated December 13, 1993. We add only the following comments.
This State has a strong public policy favoring enforcement of agreements. See Department of Pub. Advocate v. New Jersey Bd. of Pub. Utils., 206 N.J. Super. 523, 528, 503 A.2d 331 (App.Div. 1985). Marital agreements are essentially consensual and voluntary and as a result, they are approached with a predisposition in favor of their validity and enforceability. Petersen v. Petersen, 85 N.J. 638, 642, 428 A.2d 1301 (1981); Dworkin v. Dworkin, 217 N.J. Super. 518, 524, 526 A.2d 278 (App.Div. 1987). Marital agreements, however, are enforceable only if they are fair and equitable. Petersen, supra, 85 N.J. at 642, 428 A.2d 1301; Carlsen v. Carlsen, 72 N.J. 363, 370, 371 A.2d 8 (1977); Guglielmo v. Guglielmo, 253 N.J. Super. 531, 541, 602 A.2d 741 (App.Div. 1992); Capanear v. Salzano, 222 N.J. Super. 403, 407, 537 A.2d 306 (App.Div. 1988). Any marital agreement which is unconscionable or is the product of fraud or overreaching by a party with power to take advantage of a confidential relationship may be set aside. Guglielmo, supra, 253 N.J. Super. at 541, 602 A.2d 741; Dworkin, supra, 217 N.J. Super. at 523, 526 A.2d 278. In fact, the law affords particular leniency to agreements made in the domestic arena and similarly allows judges greater discretion when interpreting these agreements. Guglielmo, supra, 253 N.J. Super. at 542, 602 A.2d 741. Such discretion is based on the premise that, although marital agreements are contractual in nature, "contract principles have little place in the law of domestic relations." Id., citing Lepis v. Lepis, 83 N.J. 139, 148, 416 A.2d 45 (1980). Nevertheless, the contractual nature of such agreements has long been recognized and principles of contract interpretation have been invoked particularly to define the terms of the agreement and divine the intent of the parties. Capanear, supra, 222 N.J. Super. at 407, 537 A.2d 306. In interpreting the agreement, the court will not draft a new agreement for the parties. Aarvig v. Aarvig, 248 N.J. Super. 181, 185, 590 A.2d 704 (Ch.Div. 1991).
*94 In this case, Mr. Massar agreed to vacate the marital home. Mrs. Massar agreed as follows:
[W]aives any claim that she may have against the husband in any action to dissolve, nullify, or terminate their marriage for desertion or any other cause of action, except no-fault divorce based upon living separate and apart for a period of 18 months or more based upon the husband's vacating the marital premises pursuant to this agreement. (emphasis added).
We agree with Judge Dilts that this language is clear and unequivocal and that Mrs. Massar surrendered her right to seek a divorce on any other than a no-fault basis. We also agree that the certifications submitted by Mrs. Massar establish nothing more than that she wished Mr. Massar out of the house; they certainly did not create a fact issue concerning duress. Similarly, we concur that this agreement is supported by consideration. Not only did Mr. Massar leave a house in which he had as much right to reside as Mrs. Massar, but also he had to undertake the additional expense of establishing a separate residence. Finally, we also agree with Judge Dilts that there is insufficient evidence to suggest that this waiver was not a knowing and voluntary act by Mrs. Massar, and a plenary hearing was not warranted.
Mrs. Massar urges us to adopt a per se rule that agreements confining a spouse to a particular cause of action for dissolution of a marriage are against public policy and are unenforceable. We have declined, however, to adopt a per se rule of enforceability of negotiated provisions in agreements between spouses. Blum v. Ader, 279 N.J. Super. 1, 652 A.2d 176 (App.Div. 1994) (choice of law provision); Morris v. Morris, 263 N.J. Super. 237, 622 A.2d 909 (App.Div. 1993) (anti-Lepis clause); Rolnick v. Rolnick, 262 N.J. Super. 343, 621 A.2d 37 (App.Div. 1993) (support escalator provision). Rather, we have reviewed the enforceability of these provisions on a case-by-case basis to determine if the application of the provision is fair and just according to the circumstances of the particular case.
The State has certainly adopted a public policy through N.J.S.A. 2A:34-1 et seq. that the citizens of this state shall have liberal grounds to disengage themselves from marriages which are *95 not viable. See Babushik v. Babushik, 157 N.J. Super. 128, 130, 384 A.2d 574 (Ch.Div. 1978). On the other hand, this State does not promote divorce and has always had a strong public interest in promoting marriage. Indeed, the no-fault provision requiring an eighteen-month continuous separation was adopted in part to allow divorcing spouses the time to reflect and discern if divorce is the appropriate action for them. The Final Report of the Divorce Law Study Commission (1970) at 70, 128-29. As observed by Judge Dilts, there is good reason to encourage a cooling off period for spouses to assess their relationship and calmly reflect whether dissolution of their marriage is the course they wish to take.
Accordingly, we decline to adopt a per se rule. We can envision many circumstances where it may be in the best interests of the parties and any children born of the marriage to dissolve a marriage without the assertion of allegations of emotional or physical abandonment, substance abuse, or certain allegations that pass for extreme cruelty. Similarly, we can envision many instances in which such an agreement may not be enforceable because it may serve to hide from the court actions of an abusive spouse or substance dependent spouse which may endanger the physical and emotional welfare of the other spouse and any children.
But that is not the situation in this case. Indeed, based on the certifications before Judge Dilts it appears that Mr. Massar realized that a physical separation was appropriate given the state of his marriage. However, he was concerned that such a separation might be interpreted as a financial abandonment of his wife. Similarly, he was concerned about his continuing ability to function as a deacon in his church. These concerns became real because upon the filing of the complaint for divorce alleging extreme cruelty he was temporarily suspended from his position in his church. Furthermore, the record before Judge Dilts suggests that Mrs. Massar filed the complaint for divorce only when her initial proposal for equitable distribution was not instantly embraced by Mr. Massar.
*96 The parties entered this agreement presumably with full knowledge of the conduct of each during the marriage which could form the basis for a cause of action for divorce. We do not suggest that the parties could enter an agreement which would preclude seeking a judgment of divorce on a ground other than eighteen months separation based on conduct which occurred after the execution of the agreement.
We emphasize that there is no suggestion in this record of any physical or mental abuse. The certifications submitted by Mrs. Massar reveal no more than a couple engaging in verbal confrontations in the context of a disintegrating marriage. Two intelligent adults should be able to agree concerning the framework and timetable for the dissolution of their troubled marriage and have that agreement enforced, if that agreement is fair and equitable to both parties under the unique circumstances of their case.
Accordingly, the December 14, 1993 Order entered by Judge DILTS is affirmed.
NOTES
[1] Judge Brochin did not participate in oral argument. However, the parties have consented to his participation in the decision.