**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2059-19T1

JOHN PARISI,

    Plaintiff-Appellant,

v.

PATRICIA PARISI,

    Defendant-Respondent.

_____

> Argued December 16, 2020 – Decided February 4, 2021
>
> Before Judges Alvarez and Sumners.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0546-18.
>
> Stephen P. Haller argued the cause for appellant (Einhorn, Barbarito, Frost & Botwinick, PC, attorneys; Stephen P. Haller, of counsel and on the briefs; Jennie L. Osborne, on the briefs).
>
> Richard J. Williams, Jr., argued the cause for respondent (McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys; Richard J. Williams, Jr., of counsel and on the brief).

PER CURIAM

In this post-judgment divorce matter, plaintiff appeals a January 8, 2020 Family Part order denying his requests to reform a provision relating to the equitable distribution of a FCG[1] account in a settlement term sheet (settlement agreement or agreement) that was incorporated into a final dual final judgment of divorce (FJOD). He also appeals the order's denial of counsel fees and partial grant of defendant's request for counsel fees. We affirm.

I

The parties are successful financial planners, who mutually sought to end their twenty-five-year marriage. On the morning of the divorce trial, defendant's counsel[2] sent plaintiff's counsel a single-spaced two-page proposed settlement agreement, stating in relevant part: "[Defendant] to receive 20% of all FCG account components. [Defendant] will be responsible for 20% of any taxes associated with the FCG account for 2019." After negotiations, they executed a

_____

[1] The record does not clearly specify what FCG stands for, but does refer to an FCG Advisors, LLC, which appears to be a company previously owned by the parties.

[2] Defendant was represented by different counsel during the trial court proceedings.

A-2059-19T1

nine-page double-spaced settlement agreement; the parties initialed each page and signed it, as did their respective counsel.

The agreement was presented to Judge Bradford M. Bury as a joint exhibit and admitted into evidence. Both parties testified that the agreement was equitable and acceptable, and that they had enough time to discuss the terms with their counsel or anyone else they chose to. The judge entered a dual FJOD incorporating the parties' settlement agreement as well as a partial equitable distribution settlement and trial stipulations.

Almost a month later, defendant's counsel emailed plaintiff's counsel about preparing a marital settlement agreement. The settlement agreement provided "a formal marital settlement agreement shall hereafter be prepared incorporating all of the terms set forth in [the settlement agreement], with no new substantive terms being added thereto." Plaintiff's counsel responded that a formal marital settlement agreement was unnecessary because "the parties are divorced, the agreements are attached to the judgment, and they are bound by their respective undertakings, the details of which we shall enforce without exception."

A-2059-19T1

Thereafter, disputes arose concerning fulfillment of the obligations under the agreement, including the distribution of the FCG account. The agreement provided the FCG account was to be distributed as follows:

> 6. <u>FCG Account</u>: This account is titled in the name of the [d]efendant. Plaintiff shall receive twenty (20%) percent <u>of all stock investments in this account</u>, in kind, equalizing the cost basis across the board, which shall be transferred to an account designated by [p]laintiff and the transfer shall take place within 30 days of the date of this document. Plaintiff will be responsible for 20% of any taxes associated with the FCG up to and including the date of the actual division of the account. After the date of distribution, each party will be responsible for the taxes on their account.
>
> [(Emphasis added).]

Plaintiff contended the "of all FCG account components" language contained in his proposed agreement was inadvertently not included in the executed settlement agreement, which instead stated "of all stock investments in this account." The final language resulted in a cash benefit to defendant in the amount of $226,756.20.

Defendant moved to enforce litigant's rights regarding her equitable interest in the parties' company, proof that plaintiff purchased a $2 million life insurance policy to secure his alimony obligations, and counsel fees. Plaintiff crossed-moved seeking, among other things, an order "[d]eclaring that

4

reformation [of the settlement agreement] is warranted to include a provision that [p]laintiff is entitled to twenty (20%) percent of all FCG account components including the cash component or in the alternative ordering a hearing on [such] issue[.]" He also proposed deposing defendant's former counsel to ascertain the parties' actual agreement regarding the FCG account.

Judge Bury denied plaintiff's request to reform the settlement agreement, finding the FCG account provision enforceable as written. This appeal followed.

## II

Our review of a judge's determination is limited. We "defer to the [family judge's] determinations 'when supported by adequate, substantial, credible evidence.'" N.J. Div. of Child Prot. & Permanency v. Y.A., 437 N.J. Super. 541, 546 (App. Div. 2014) (citing N.J. Div. of Youth & Family Servs. v. I.Y.A., 400 N.J. Super. 77, 89 (App. Div. 2008) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998))). To determine whether the parties reached an agreement, this court must consider "whether there was sufficient credible evidence to support the trial [judge's] findings." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 342 (2010). "[A] party must clearly demonstrate the existence of a genuine issue as to a material fact before a [plenary] hearing is necessary."

5

Lepis v Lepis, 83 N.J. 139, 159 (1980). We owe no special deference to the judge's legal determinations. Slawinski v. Nicholas, 448 N.J. Super. 25, 32 (App. Div. 2016).

This court has recognized that "[i]nterpretation and construction of a contract is a matter of law for the court subject to de novo review." Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998) (citing Bradford v. Kupper Assocs., 283 N.J. Super. 556, 583 (App. Div. 1995)). That said, "[t]he law grants particular leniency to agreements made in the domestic arena," thus allowing "judges greater discretion when interpreting such agreements." Guglielmo v. Guglielmo, 253 N.J. Super. 531, 542 (App. Div. 1992) (citing N.J.S.A. 2A:34-23).

"Settlement of disputes, including matrimonial disputes, is encouraged and highly valued in our system." Quinn v. Quinn, 225 N.J. 34, 44 (2016) (citing Konzelman v. Konzelman, 158 N.J. 185, 193 (1999)). "Marital agreements . . . are approached with a predisposition in favor of their validity and enforceability." Massar v. Massar, 279 N.J. Super. 89, 93 (App. Div. 1995) (citing Petersen v. Petersen, 85 N.J. 638, 642 (1981)). Our Supreme Court "has observed that it is 'shortsighted and unwise for courts to reject out of hand consensual solutions to vexatious personal matrimonial problems that have been

6

advanced by the parties themselves.'" Quinn, 225 N.J. at 44 (quoting Konzelman, 158 N.J. at 193). Consequently, "fair and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed." Ibid. (quoting Konzelman, 158 N.J. at 193-94).

"The basic contractual nature of matrimonial agreements has long been recognized." Pacifico v. Pacifico, 190 N.J. 258, 265-66 (2007) (citing Harrington v. Harrington, 281 N.J. Super. 39, 46 (App. Div. 1995)). "The polestar of [contract] construction is the intention of the parties . . . ." Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 301 (1953). "The starting point in ascertaining that intent is the language of the contract." Commc'ns Workers of Am., Local 1087 v. Monmouth Cnty. Bd. of Soc. Servs., 96 N.J. 442, 452 (1984) (citation omitted). Importantly, "[i]t is not the real intent[,] but the intent expressed or apparent in the writing that controls." Friedman v. Tappan Dev. Corp., 22 N.J. 523, 531 (1956) (citation omitted).

Guided by these principles and having reviewed the record, we discern no reason to disturb Judge Bury's order denying plaintiff's motion to reform the settlement agreement incorporated in the FJOD. There is no merit to plaintiff's contention that there was an inadvertent omission in not incorporating the "of

all FCG account components" language set forth in the proposed settlement agreement.

The parties negotiated the terms of the agreement and changes were made to plaintiff's initial proposal. The final settlement agreement was drafted by plaintiff's counsel and both parties agreed upon it – verbally and in writing. The fact that plaintiff's counsel indicated, almost a month after the settlement agreement was reached, that there was no need to prepare a formal matrimonial agreement because the parties were bound to what was incorporated into the FJOD strongly indicates the agreement was consistent with the parties' intentions.

Considering that the parties, as the judge noted, were successful and sophisticated professionals in financial planning services, it is hard to fathom that the provision in question—a swing of almost a quarter of a million dollars to defendant's benefit—was inadvertently omitted. Significantly, in reviewing the FCG account provision, the judge noted, "[t]his is not a situation where language in the relevant [provision] is ambiguous, that it's unclear[,] [n]o, it's the opposite[,] [i]t's very clear[,] [i]t is unambiguous." Thus, the judge properly refused to consider extrinsic evidence including certifications from plaintiff and plaintiff's counsel because no exception to the parole evidence rule applied. See

<u>Wellington v. Estate of Wellington</u>, 359 N.J. Super. 484, 495 (2003) (holding extrinsic and parole evidence would not be admissible to alter the terms of the complete and unambiguous written agreement).

Plaintiff's reliance on <u>Capanear v. Salzano</u>, 222 N.J. Super. 403, 407-08 (App. Div. 1998), where we explained that a matrimonial agreement may be reformed, is misplaced. There, we held that

> . . . where reformation is premised upon mistake in the preparation of the agreement, there must be clear and convincing proof that the contract in its reformed, and not original, form is the one that the contracting parties understood and meant it to be; and as, in fact, it was but for the alleged mistake in its drafting. Clear and convincing evidence should produce in the mind of the trier of the fact a firm belief or conviction as to the truth of the allegations sought to be established.
>
> [<u>Ibid.</u> (internal citations and quotation marks omitted).]

In the current situation, plaintiff falls short of demonstrating by clear and convincing proof that the "inadvertently" omitted language reflects the parties' actual agreement. The parties are sophisticated financial professionals who, represented by counsel, unequivocally agreed to the terms of the settlement agreement. There was no basis to overturn the judge's ruling that the parties agreed upon the plaintiff's initially proposed settlement agreement terms regarding the FCG account.

In addition, plaintiff cites <u>Quinn</u>, where the Court held that "unconscionability, fraud, or overreaching in the negotiations of the settlement," would warrant reformation of a settlement agreement. 225 N.J. at 47 (quoting <u>Miller v. Miller</u>, 160 N.J. 408, 419 (1999)). However, there was no evidence that fraud or overreaching occurred that resulted in an inaccurate FCG provision in the settlement agreement.

The judge did not abuse his discretion in declining plaintiff's request to conduct a plenary hearing or to depose defendant's former counsel as to the parties' actual agreement relating to the FCG account. There was no genuine factual dispute regarding what the parties agreed to. As mentioned, the evidence clearly supports the judge's determination that the parties did not agree to the initially proposed language relating to the FCG account. We agree with the judge that granting plaintiff's application would open the floodgates for dissatisfied litigants to make unsupported claims of mistakes in a settlement agreement to seek favorable terms that were not agreed upon.

III

We next consider plaintiff's contention regarding counsel fees. There is no merit to plaintiff's claim that the judge abused his discretion by failing to

10

make a determination on his counsel fee application and to consider all the applicable factors when awarding defendant counsel fees. (Pb43.)

The judge declined to award plaintiff counsel fees because he "did not prevail substantially on the reliefs that he sought, and, in fact, was in violation of litigant's rights himself" for failing to secure the life insurance policy in accordance with the settlement agreement. The record supports the judge's reasoning that plaintiff was well over two months late in securing such policy, which is "totally unacceptable for a man of his knowledge and for a man of his means."[3]

As for the award of defendant's counsel fees, the judge sufficiently addressed the relevant factors under Rule 5:3-5(c),[4] and his determination is

---

[3] Plaintiff obtained a policy the day of the motion hearing.

[4] Rule 5:3-5(c) provides:

> In determining the amount of the fees award, the court should consider . . . the following factors: (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the

fully supported by the record. The judge correctly recognized that: both parties are successful professionals; plaintiff's business income is approximately $1.4 million; and the fee request was reasonable. The judge noted defendant was the prevailing party, having properly moved to enforce litigant's rights after plaintiff failed to comply with certain terms of their FJOD. (1T:23-11 to 24).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of the award.

A-2059-19T1