**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1476-15T2

JANINE CLAPPER n/k/a
JANINE SEELEY,

    Plaintiff-Respondent,

v.

GREGORY CLAPPER,

    Defendant-Appellant.

_____

Submitted December 7, 2016 – Decided May 25, 2017

Before Judges Fuentes, Carroll and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FM-15-1104-10.

Gary L. Goldberg, attorney for appellant.

Respondent has not filed a brief.[1]

PER CURIAM

In this post-judgment matrimonial matter, defendant Gregory

Clapper appeals from the provisions of the October 23, 2015 Family

---

[1] Plaintiff did not file a brief, having had her ability to file a brief suppressed by our order dated May 23, 2016.

Part Order denying his application to emancipate the parties' then twenty-one-year-old son, J.C., denying his application to terminate child support, and granting plaintiff's cross-motion requiring defendant to contribute prospectively towards J.C.'s post high school education expenses pursuant to the parties' property settlement agreement (PSA). Defendant contends that the "information provided to the [t]rial [c]ourt, was woefully inadequate to justify denying emancipation" and the court "erred in failing to terminate" or "reduce child support" and "in requiring [] defendant to contribute to the cost of [J.C.]'s training prospectively" without considering the factors enunciated in Newburgh v. Arrigo, 88 N.J. 529 (1982) and Gac v. Gac, 186 N.J. 535 (2006). Having considered these arguments in light of the record and applicable legal principles, we reverse and remand for an evidentiary hearing.

I.

We derive the following facts from the record. Defendant and plaintiff Janine Clapper divorced in 2011 following a nineteen-year marriage. Two children were born of the marriage, J.C., born in September 1994, and G.C., born in March 2001. A final judgment of divorce terminating the parties' marriage was entered on March 15, 2011, which incorporated a PSA between the parties. Under the PSA, the parties share joint legal custody of the children with

2                                                          A-1476-15T2

plaintiff designated as the parent of primary residence and defendant designated as the parent of alternate residence. Defendant was obligated to pay $232 per week in child support "which exceeds the Child Support Guidelines[.]"

The PSA provides for termination of defendant's child support obligations on the first of the following events:

> A. Graduation from high school, however, in the event the child cease[s] to attend high school, then and in that event, upon the child's eighteenth birthday. If the child continues full time education after high school, then upon graduation from the post-high school institution.
>
> B. The child's marriage.
>
> C. Anything to the contrary notwithstanding, if the child becomes disabled[.]
>
> D. Demise of the child or the [defendant.]
>
> E. Entry in the Armed Forces of the United States[.]
>
> F. Engaging in full time employment upon and after the child attaining the age of eighteen (18) years, except that: (i) [e]ngaging by the child in partial, part-time or sporadic employment shall not constitute emancipation, and (ii) [e]ngaging by the child in full time employment during vacation and summer periods shall not be deemed emancipation.
>
> G. Emancipation arising from employment shall be deemed terminated and nullified upon the cessation by the child, for any reason, from full time employment and the period, if any, from such termination until the earliest of

A-1476-15T2

any of the other events herein set forth, shall, for all purposes under this Agreement, be deemed a period prior to the occurrence of such emancipation.

H. A child attending college or similar post high school educational institution shall not be considered emancipated.

Additionally, in connection with college education, the PSA expressly provides:

6.1 <u>JOINT OBLIGATION</u>: The [p]arties recognize that they have a joint, but not necessarily equal, obligation to provide a college education for the unemancipated child of the marriage and the precise amount of their respective contributions shall be determined at the time the college expense is incurred. This determination shall be based upon a review of each [p]arty's overall financial circumstances including their income, assets and obligations including, but not limited to, the [defendant's] obligation to pay child support.

6.2 <u>REVIEW</u>: The [p]arties acknowledge that depending upon the location of the college, the actual cost, and the [p]arties financial circumstances at the time, the new college educational expense may require a review of the [defendant's] child support obligation.

6.3 <u>COLLEGE EXPENSES</u>: A college expense shall be defined as an expense for tuition, books, room and board, student fees, and transportation from the residence to school, student activity fees and such other costs reasonably necessary to maintain the child in school. Prior to either [p]arty having an obligation to contribute to such expenses, the child shall first have the obligation to apply for all existing loans, scholarships, grants,

A-1476-15T2

and further to utilize any funds accumulated by the child to meet the obligation.

6.4 CASELAW: The factors to be considered on the issue of evaluating a claim for contribution towards the cost of higher education were summarized in the New Jersey Supreme Court case of Newburgh v. Arrigo, 88 N.J. 529 [(1982)]. The [p]arties agree to comply with their respective obligations in accordance with this case.

In April 2015, defendant filed a motion seeking, among other things, an order declaring J.C. emancipated retroactive to February 28, 2013, reimbursement of post-emancipation child support payments, and termination of child support for J.C. Plaintiff filed a cross-motion seeking, among other things, to compel defendant to contribute towards J.C.'s "post high school educational expenses pursuant to article 6.1 of the [PSA]."

In support of his motion, defendant certified that he was "essentially out of work" as "a self-employed painter" due to "major health problems" and "has applied for disability." Defendant averred that his tax return reflected an income of "[$29,684] in 2014" while, at the time of the divorce, he "was imputed with income of [$40,000]." According to defendant, "he has no income to date for 2015" and "has been paying child support [by] liquidating assets, which are just about exhausted."

Defendant also certified that after J.C.'s graduation from high school in June 2012, J.C. "went to North Carolina in October

2012," where he attended NASCAR Technical School (NASCAR Tech) and "worked part-time." According to defendant, J.C. graduated from NASCAR Tech "in February 2013" and obtained full-time employment with "Goodyear Racing Tires in North Carolina" while working "as a jackman in [ARCA] Racing." Defendant certified that J.C. is no longer "attending college, or any school[.]" As a result, defendant sought an order emancipating J.C. retroactive to February 2013 when he graduated from NASCAR Tech.

In contrast, plaintiff certified that J.C. graduated from Universal Technical Institute, NASCAR's technical school, in February 2014, rather than 2013 as asserted by defendant. Further, plaintiff averred that "[t]his was the initial phase of the education and training [J.C.] would need to have before he could reach his career goal[]" of becoming "a [p]it [c]rew member for a NASCAR racing team."

According to plaintiff, after graduating from NASCAR Tech, J.C. continued his education by immediately enrolling in "PIT U Training Course[,]" the only pit crew training school "licensed by the North Carolina Community College System." Plaintiff described the program as "a graduate program by invitation only[]" where J.C. currently "attends mandatory classes two (2) days a week and field training five (5) days per week. In addition [J.C.]

interns with the ARCA racing programs during the racing season at various tracks around the country as a [j]ackman."

According to plaintiff, "[d]ue to his rigorous schedule [J.C.] can only work part-time." Plaintiff certified that "in 2014[, J.C.] only earned a little over $16,000." Plaintiff continued that "[J.C.] presently works for Randstand in the Goodyear Racing Division as a tire specialist." However, plaintiff averred that J.C. continued to rely on her financially to meet his basic expenses, including housing costs.

Plaintiff provided a document from Universal Technical Institute listing payments totaling $34,650 to J.C.'s student account as of April 14, 2015. Plaintiff also submitted a NAVIENT student loan payment history statement dated April 24, 2015, showing a total balance of $22,781.59 and a private student loan balance of $1,004.56 as of April 24, 2015. Additionally, plaintiff presented a document signed by J.C.'s purported landlord stating that plaintiff has paid $300 each month since October 2012 for J.C.'s rent in North Carolina.

According to plaintiff, some of these expenses have been met through contributions made by her mother. Plaintiff certified further that "each time [she] . . . made a request for [d]efendant to make a financial contribution towards the costs, [d]efendant either refused or ignored the requests." Plaintiff also dismissed

defendant's "claims of poverty" and disputed that defendant was out of work.

After hearing argument on the motions, the trial court denied defendant's application for emancipation and termination of child support without prejudice and ordered defendant "to contribute towards [J.C.'s] post high school educational expenses pursuant to article 6.1 of the [PSA]" prospectively from July 14, 2015. The court determined that Justin was still in the process of completing a non-traditional post high school education in order to reach "his goal of working in the pit crew on NASCAR[,]" through a program that the court described as a "hybrid vo-tech and in class" "clinical education." The judge explained that

> the P.S.A. says, 'If the child continues full-time education after high school, then upon graduation from post high school institution' -- it doesn't say college with a capital C or university with a capital U. Here he has completed two years of the one program and now there's this other program. . . . [M]y inclination certainly is to say by May or June of 2016 he'll be emancipated more likely than not because if he's completed the program then, that's it. That will be your four years, if you will, of college or post high school education.

Relying on Gac v. Gac, supra, the court denied plaintiff's request for retroactive contributions without prejudice finding that, based on the record before the court, plaintiff did not discuss or consult with defendant ahead of time and "[plaintiff]

never once put anything in writing" to defendant seeking contributions. However, the court explained that "because everybody knows now where we're at and that they're seeking contribution, and . . . I don't set any number here or do anything other than to say prospectively. Everybody knows what's going on now[.]"

This appeal followed. On appeal, defendant argues that:

> THE TRIAL COURT ABUSED ITS DISCRETION, AND ERRED, IN FAILING TO FOLLOW THE CRITERIA SET FORTH IN <u>NEWBURGH V[.] ARRIGO</u> AND OTHER CONTROLLING CASES, AND ERRED IN FAILING TO EMANCIPATE AND TERMINATE CHILD SUPPORT FOR [J.C.] RETROACTIVE.

## II.

We ordinarily accord great deference to the discretionary decisions of Family Part judges. <u>Donnelly v. Donnelly</u>, 405 <u>N.J. Super.</u> 117, 127 (App. Div. 2009) (citing <u>Larbig v. Larbig</u>, 384 <u>N.J. Super.</u> 17, 21 (App. Div. 2006)). Similar deference is accorded to the factual findings of those judges following an evidentiary hearing. <u>Cesare v. Cesare</u>, 154 <u>N.J.</u> 394, 411-12 (1998). While we respect the Family Court's special expertise, we may exercise more extensive review of trial court findings that do not involve a testimonial hearing or assessments of witness credibility. <u>Cf.</u> <u>N.J. Div. of Youth & Family Servs. v. G.M.</u>, 198 <u>N.J.</u> 382, 396 (2009) (stating that deference to Family Court

conclusions is not required where "no hearing takes place, no evidence is admitted, and no findings of fact are made").

A judge may not make credibility determinations or resolve genuine factual issues based on conflicting affidavits. Conforti v. Guliadis, 128 N.J. 318, 322 (1992). When the evidence discloses genuine material issues of fact, a Family Court's failure to conduct a plenary hearing to resolve those issues is a basis to reverse and remand for such a hearing. See, e.g., Fusco v. Fusco, 186 N.J. Super. 321, 329 (App. Div. 1982); Tancredi v. Tancredi, 101 N.J. Super. 259, 262 (App. Div. 1968). We must always determine whether there is sufficient credible evidence in the record to support the trial court's factual determinations. Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974).

Having set forth our standard of review, we next discuss the principles that guide our analysis of the issue of emancipation and a claim for contribution to the costs of higher education. In Filippone v. Lee, 304 N.J. Super. 301 (App. Div. 1997), we summarized the controlling principles regarding emancipation:

> Emancipation of a child is reached when the fundamental dependent relationship between parent and child is concluded, the parent relinquishes the right to custody and is relieved of the burden of support, and the child is no longer entitled to support. Emancipation may occur by reason of the

10

> child's marriage, by court order, or by reaching an appropriate age, and although there is a presumption of emancipation at age eighteen, that presumption is rebuttable. In the end the issue is always fact-sensitive and the essential inquiry is whether the child has moved "beyond the sphere of influence and responsibility exercised by a parent and obtains an independent status of his or her own." Bishop v. Bishop, 287 N.J. Super. 593, 598 (Ch. Div. 1995).
>
> [Filippone, supra, 304 N.J. Super. at 308.]

In making this determination, a court must engage in "a critical evaluation of the prevailing circumstances including the child's need, interests, and independent resources, the family's reasonable expectations, and the parties' financial ability, among other things." Dolce v. Dolce, 383 N.J. Super. 11, 18 (App. Div. 2006) (citing Newburgh, supra, 88 N.J. at 545). Thus, upon a showing the child has reached the age of majority, the proponent of emancipation satisfies the prima facie showing, shifting the burden to the opponent of emancipation to show there is a basis to continue support. Filippone, supra, 304 N.J. Super. at 308.

We have held that a child's attendance in postsecondary education may be a basis to delay emancipation and continue support. See Patetta v. Patetta, 358 N.J. Super. 90, 93-94 (App. Div. 2003); Keegan v. Keegan, 326 N.J. Super. 289, 295 (App. Div. 1999). In addition to child support, financially capable parents may be required to contribute to the higher education of children

who are qualified students. In <u>Newburgh</u>, our Supreme Court identified twelve non-exhaustive factors a court should consider when deciding a claim by one parent for contribution to the costs of a child's higher education, namely,

> (1) whether the parent, if still living with the child, would have contributed toward the costs of the requested higher education; (2) the effect of the background, values and goals of the parent on the reasonableness of the expectation of the child for higher education; (3) the amount of the contribution sought by the child for the cost of higher education; (4) the ability of the parent to pay that cost; (5) the relationship of the requested contribution to the kind of school or course of study sought by the child; (6) the financial resources of both parents; (7) the commitment to and aptitude of the child for the requested education; (8) the financial resources of the child, including assets owned individually or held in custodianship or trust; (9) the ability of the child to earn income during the school year or on vacation; (10) the availability of financial aid in the form of college grants and loans; (11) the child's relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and (12) the relationship of the education requested to any prior training and to overall long-range goals of the child.
>
> [<u>Newburgh</u>, <u>supra</u>, 88 <u>N.J.</u> at 545.]

No one factor is alone determinative. <u>Ibid.</u>

In a later opinion, our Supreme Court directed that courts "should balance the statutory criteria of N.J.S.A. 2A:34-23(a)[2] and the Newburgh factors, as well as any other relevant circumstances, to reach a fair and just decision whether and, if so, in what amount, a parent or parents must contribute to a child's educational expenses." Gac v. Gac, supra, 186 N.J. at 543. Furthermore,

> the factors set forth in Newburgh . . . contemplate that a parent or child seeking contribution towards the expenses of higher education will make the request before the educational expenses are incurred. As soon as practical, the parent or child should communicate with the other parent concerning the many issues inherent in selecting a college. At a minimum, a parent or child seeking contribution should initiate the application to the court before the expenses are incurred. The failure to do so will weigh heavily against the grant of a future application.
>
> [Id. at 546-47.]

Because these issues are fact-sensitive, courts must be cautious when making these rulings without an evidentiary hearing where there are material facts in dispute. See Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007) (indicating that where facts

---

[2] N.J.S.A. 2A:34-23(a) sets forth additional factors to consider "[i]n determining the amount to be paid by a parent for the support of the child and the period during which the duty of support is owed[.]"

are disputed or depend on credibility evaluations, a plenary hearing is required); see also Tretola v. Tretola, 389 N.J. Super. 15, 20 (App. Div. 2006) (reversing an emancipation motion and requiring a plenary hearing because the court failed to recognize disputed material facts and "evidence beyond the motion papers necessary for resolution of the matter") (citation omitted); Conforti, supra, 128 N.J. at 322 (holding that a plenary hearing is necessary when there remains "contested issues of material fact on the basis of conflicting affidavits") (citation omitted).

Here, the court did not conduct an evidentiary hearing and decided the emancipation and college contribution issues solely on the parties' conflicting certifications, without resolving the discrepancies raised during oral argument. As a result, several important issues remained unresolved. Further, the court's ruling includes no consideration of the Newburgh factors as required under the PSA and caselaw. Specifically, the court never addressed defendant's financial ability to make contributions or J.C.'s actual education expenses. The court never verified J.C.'s financial need or annual income. The court never explored the availability of financial aid or the relationship between the requested contribution to the course of study or kind of school selected.

The court concluded that the NASCAR Tech program constituted post high school education as prescribed in the PSA without proofs detailing the programs of study, J.C.'s aptitude for them, or transcripts encompassing courses or credits. Further, the court determined that J.C.'s continued student status forestalled emancipation despite defendant's assertion that the program, in fact, concluded in 2013 and plaintiff's limited proofs identifying an anticipated completion date.

In ordering defendant to contribute only prospectively to J.C.'s education expenses, the court concluded that defendant was never consulted prior to J.C.'s enrollment based on plaintiff's failure to produce any documentary evidence supporting her claim to the contrary. However, because defendant did not specifically dispute that claim and acknowledged J.C.'s enrollment in the NASCAR Tech program in October 2012, limiting the contribution to future education expenses appears to be unsubstantiated. Further, the court's ruling includes no determination of the precise amount of defendant's contribution as required by the PSA and Gac.

We have held that "[d]isputes of material fact should not be resolved on the basis of [written] certifications nor in reliance upon ambiguous terms in a property settlement agreement." Palmieri v. Palmieri, 388 N.J. Super. 562, 564 (App. Div. 2006) (citing Conforti, supra, 128 N.J. at 328-29). We agree with defendant

15                                                                    A-1476-15T2

that the information provided to the court was "woefully inadequate" to resolve the facts in dispute and to justify the court's rulings. As such, a plenary hearing is necessary to guide the court in reaching an appropriate resolution of the issues.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1476-15T2