**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2679-17T4

CARMELO BELARDO,

     Plaintiff-Appellant,

v.

MARY JO BELARDO,

     Defendant-Respondent.

_____

        Argued January 22, 2019 – Decided February 21, 2019

        Before Judges Messano and Gooden Brown.

        On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-1564-03.

        Gregory S. Baxter argued the cause for appellant (Caruso & Baxter, PA, attorneys; Gregory S. Baxter on the briefs).

        Mary Jo Belardo, respondent, argued the cause pro se.

PER CURIAM

In this post-judgment matrimonial matter, plaintiff ex-husband appeals from a January 8, 2018 Family Part order denying his motion to emancipate the parties' only child, a daughter born March 1998, and ordering him to pay sixty percent of their daughter's college costs. For the reasons that follow, we reverse and remand for further proceedings.

The parties married in 1997 and divorced in 2004. Under the parties' property settlement agreement (PSA), which was incorporated into their November 10, 2004 dual judgment of divorce (DJOD), defendant ex-wife had "sole legal custody" and "primary physical custody" of their daughter, and plaintiff was required to pay child support of $180 per week, payable through the Probation Department. However, "[t]he parties agree[d] to recalculate child support" when their daughter became "eligible to receive social security benefits" based on plaintiff's anticipated receipt of benefits in 2006 when he turned sixty-two years of age, "or upon the happening of any other change in circumstances."

Pertinent to this appeal, under the PSA, plaintiff's child support obligation would continue until their daughter was "deemed emancipated" upon the occurrence of any of the following:

> a.    reaching the age of [eighteen] years or the completion of [four] academic years of continuous

A-2679-17T4

college education consisting of full[-]time attendance, taking at least twelve (12) credits per semester, whichever last occurs;

. . . .

[b].   permanent residence away from the residence of the parent who has physical custody.  A residence at . . . college is not to be deemed a residence away from the residence of the parent who has physical custody and hence such residence . . . is not to be deemed emancipation; [or]

. . . .

[c].   engaging in full[-]time employment upon and after the attainment by the child of [eighteen] years of age, except if the child is in college[.]

Regarding the parties' obligation to contribute to college expenses, the provision of the PSA entitled "College/Vocational School" specifically provided:

> Should the child desire to attend college or vocational school and have the ability to do so, each party shall be responsible to share the cost and expense of said college or vocational school, to the extent that each shall be financially able to do so, after first utilizing all loans, grants[,] and scholarships available to the child.  Said costs shall include, but shall not be limited to application fees, tuition, costs, fees, financial aid consulting fees, room and board, books[,] and commuting expenses.  The choice of said college or vocational school shall be mutually agreed upon in advance by . . . [plaintiff], . . . [defendant,] and the

3

child.  Neither party shall unreasonably withhold agreement with regard to said choice.

Additionally, the parties "agree[d] that child support [would] be renegotiated in the event that the child attend[ed] college or vocational school and live[d] away from home."

In negotiating and executing the PSA, the parties acknowledged "they [had] been fully represented by their respective counsel," with whose services "they [were] satisfied," and they understood "the legal and practical effect of [the] [a]greement."  They further acknowledged that the agreement was "fair and equitable, that they enter[ed] into same voluntarily with no coercion, threats[,] or undisclosed promises," and that the agreement was "not the result of any fraud, duress[,] or undue influence" exercised by anyone.

Prompted by their daughter's high school graduation in June 2016, in a June 17, 2016 consent order, the parties acknowledged their shared "obligation to provide for the full-time college or vocational school education of [their daughter]," and agreed to exchange financial information, including "2014 and 2015 tax returns," "W-2's" and "recent paystubs[,]" in order "to address the issue . . . per the parties['] [PSA]."  The financial documents were due within fourteen days of the execution of the order.

Thereafter, on March 23, 2017, plaintiff moved to emancipate their daughter and terminate his child support obligation, effective April 1, 2017, based upon her graduation from the Robert Fiance Beauty School (Robert Fiance). Plaintiff also sought an order terminating his "obligation to pay any amount toward [their daughter's] college/vocational school expenses . . . as of [April 1, 2017,]" or limiting his contribution to the amount he "ha[d] already paid" towards the Robert Fiance expenses. In the alternative, plaintiff sought a recalculation of his child support obligation, taking into consideration his payments to Robert Fiance and his daughter's receipt of social security benefits.

In his supporting certification, plaintiff stated that after graduating from high school, their daughter enrolled in Robert Fiance's "ten month program" and was graduating in March 2017. Plaintiff asserted "[i]t was [his] understanding that [their daughter] would emancipate . . . upon her graduation from Robert Fiance." Thus, at defendant's request, he had paid eighty percent of the total cost, or $6760, in order for their daughter to attend Robert Fiance, and believed that the payment satisfied his college contribution obligation under the PSA.

However, in "approximately [July] 2016," defendant advised him via text message that their daughter "might attend Brookdale Community College [(Brookdale)]." In addition, after Probation notified plaintiff that his child

support obligation would automatically terminate on August 1, 2017, defendant requested a "[c]ontinuation of [s]upport" based on their daughter's enrollment in "college or other post-secondary education program," which resulted in a determination that his child support obligation would continue until March 11, 2021.

Although plaintiff did "not know if [their daughter] ever attended Brookdale," he did not believe he had "any responsibility to further contribute to the cost of [her] attending college or Brookdale" because "the terms of both [their] PSA and the [June 17, 2016 consent] [o]rder" only obligated him to pay for "either college or vocational school[,] [n]ot both." Further, when he paid for Robert Fiance, defendant represented to him in a text message that she was "not asking [him] to pay for college."

Plaintiff also objected to paying for "any college above and beyond Robert Fiance" because his daughter "ha[d] refused to have a relationship with [him,]" and neither his daughter nor defendant consulted him about college in any meaningful way. Plaintiff asserted that following the divorce, despite being awarded "supervised parenting time," "[d]efendant did whatever she could to prevent [him] from having any relationship at all with [their daughter,]" and, as a result, he had no contact with her from 2003 to 2015. Further, he never

A-2679-17T4

received any acknowledgements for the "greeting cards" and "magazine subscriptions" he sent her regularly during that time period. After he initiated contact with her via text messaging, they exchanged texts and had four visits from 2015 to 2016. However, according to plaintiff, as soon as he arranged to make the Robert Fiance payments, "[their daughter] ceased speaking to [him]."

Plaintiff declared that if their daughter was not emancipated, he sought a recalculation of child support[1] based on changed circumstances. Plaintiff stated that he was then "[seventy-two] years old, . . . [twenty-one] years older than [d]efendant," and, despite working "full-time" "as an optician," "simply want[ed] to retire."[2] Plaintiff certified he "collected age-based Social Security Benefits" since turning "age [sixty-five,]" and believed defendant and their daughter received a "derivative Social Security Benefit" from his benefit. He asserted further that defendant was "employed on a full[-]time basis as a sales associate" and, although "[he did] not know how much [she] earn[ed,]" he "believe[d] that [her] income ha[d] increased since [their] [d]ivorce." Plaintiff

---

[1] Plaintiff certified he currently paid child support of $217 per week as a result of cost of living increases.

[2] An addendum to the PSA provided that "[plaintiff's] retirement at age [sixty-two would] be a sufficient change of circumstances warranting a recalculation of [child] support, providing his income [was] reduced as a result of his retirement."

also criticized defendant for failing to provide her current financial information as required by the consent order, despite his compliance. As a consequence, he sought appropriate relief from the court.

Defendant opposed the motion and cross-moved for an order establishing the respective college contributions of the parties, as well as other relief not pertinent to this appeal. In her supporting certification, defendant disputed most of plaintiff's assertions. Specifically, defendant certified that "[n]otwithstanding [p]laintiff's efforts to avoid the discussion, [she had] engaged in repeated and many communications with [p]laintiff about [their] daughter's college education." According to defendant, rather than being emancipated, their daughter "[was] attending Brookdale" "full-time," "commuting to college from [defendant's] home," and "receiving scholarship funding[,]" resulting in an "expected net cost" to them of "less than [$1000]" in college expenses. Defendant supplied a letter from Brookdale College's enrollment specialist indicating that their daughter was enrolled full-time for the Fall 2016 and the Spring 2017 semesters.

Defendant asserted that plaintiff misinterpreted the PSA because "the use of 'or' in [their] agreement as to vocational school and college was [never] intended to limit [their] daughter's academic and life progress to one or the

other." Defendant also denied preventing plaintiff from having a relationship with their daughter and attributed "any distanced relationship" to plaintiff. Additionally, defendant denied that their daughter was "receiving social security benefits[,]" and denied that she (defendant) failed to provide financial information as required by the consent order. Defendant claimed that her earnings from working "at an eye glass store" represented twenty-five percent of the parties' total income while plaintiff, "a most successful professional[,]" earned the remaining seventy-five percent.

In a reply certification, plaintiff refuted several of defendant's contentions. Specifically, plaintiff denied that either defendant or their daughter "ever approached [him], consulted [him,] or otherwise advised [him] that [their daughter] was going to attend Brookdale prior to her doing so." Further, contrary to defendant's contention that he refused to reimburse her for the Brookdale expenses, plaintiff denied receiving any schedules, grades[,] or expenses from Brookdale or being provided "access to anything." While plaintiff acknowledged that, at age nineteen, their daughter "may no longer [be] receiv[ing] Social Security [b]enefits," he reaffirmed that "[she] received these benefits for many years while [he] paid guideline child support." Further,

9

plaintiff denied that defendant provided "her financials," in direct violation of the consent order.

Plaintiff requested oral argument as permitted under Rule 1:6-2(c). Upon being notified that the trial court wished to hear the motion and cross-motion on the papers, plaintiff's counsel sent a letter to the court renewing plaintiff's request for oral argument. Plaintiff's counsel also objected to the court considering defendant's supplemental certification and attached exhibits, submitted in response to plaintiff's reply certification without leave of court in violation of Rule 1:6-3(b).[3]

Notwithstanding plaintiff's request, on January 8, 2018, over nine months after plaintiff's motion was filed, without conducting oral argument, the court denied plaintiff's motion to emancipate their daughter, or, in the alternative, recalculate child support, and ordered him to contribute sixty percent towards college expenses. In the statement of reasons accompanying the order, the court applied the factors delineated in Newburgh v. Arrigo, 88 N.J. 529, 545 (1982), to determine a parent's obligation to pay for college expenses. Additionally, in making factual findings, the court relied on the college contribution provision

---

[3] Defendant's supplemental certification and exhibits were not provided by either party and are therefore not part of the record.

A-2679-17T4

in the PSA, the parties' financial information, and the college expenses incurred to date as supplied by defendant.

The court determined that "if the parties were still living together[,] . . . they both would have contributed" to their daughter's college expenses and "[had] the means to contribute." The court also found the cost of attendance, in comparison to the parties' annual income, would not constitute "an unreasonable burden," and was "in line with the traditional costs associated with programs at [Robert Fiance] and [Brookdale]." Moreover, according to the court, the child demonstrated the necessary aptitude for college, having completed Robert Fiance, and now attending Brookdale "to enhance her future employment prospects."

The court was "unable to determine whether either of the parties had been actively engaged in [their daughter's] decision to attend [Robert Fiance] and [Brookdale,]" and acknowledged that "[p]laintiff ha[d] a strained relationship with [their] daughter." Nonetheless, the court determined "based on what has been provided, . . . that [p]laintiff has attempted and continue[d] to attempt [to have] a relationship with [their] daughter by way of correspondence and contributing towards [their daughter's] college expenses in 2016."

The court concluded:

> [T]he parties[] have an obligation to contribute to [their daughter's] college expenses. The court acknowledges that [plaintiff's] lack of a relationship with the parties' child and [defendant's] failure to provide [plaintiff] with the child's course schedules and grades should bar him from having a college contribution obligation. However, the court will not dismiss [plaintiff's] obligation due to the fact that the parties' child has made a significant effort to continue her education and apply for grants, loans, and scholarships, which have almost completely covered the costs of her education.

At no point in the statement of reasons did the court expressly address the provision of the PSA requiring plaintiff to contribute to either "college or vocational school." This appeal followed.

On appeal, plaintiff argues the court erred in denying oral argument, which is permitted under Rule 5:5-4(a) "when significant substantive issues are raised." Plaintiff also argues the court "did not have the right to change the parties' agreement" and confer a benefit to defendant that "was contrary to the agreement reached by the parties." Thus, plaintiff argues the court erred in not emancipating their daughter, and terminating his "obligation to provide child support" and contribute to "college costs . . . based on the parties' agreement and the case law." Additionally, plaintiff argues that "[a]ny reliance" placed on defendant's "second reply certification should . . . be voided" as violating Rule 1:6-3(b).

A-2679-17T4

We begin with a review of basic principles. "Although we are obliged to defer to the factual findings and discretionary decisions made by the Family Part due to the specialized nature of the court," Barr v. Barr, 418 N.J. Super. 18, 31 (App. Div. 2011) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)), "a question regarding the interpretation or construction of a contract is a legal one and our review is plenary, with no special deference to the trial judge's interpretation of the law and the legal consequences that flow from the established facts." Ibid. It is well established that matrimonial agreements, like the PSA in this case, are basically contractual in nature. Pacifico v. Pacifico, 190 N.J. 258, 265 (2007). Thus, its interpretation is subject to de novo review on appeal. Zabilowicz v. Kelsey, 200 N.J. 507, 512-13 (2009). See Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 474 (App. Div. 2009) (reviewing the enforcement of a settlement agreement de novo).

While we recognize "[t]he basic contractual nature of matrimonial agreements," we grant "'particular leniency to agreements made in the domestic arena'" and allow the Family Part "'greater discretion when interpreting such agreements.'" Sachau v. Sachau, 206 N.J. 1, 5 (2011) (quoting Guglielmo v. Guglielmo, 253 N.J. Super. 531, 542 (App. Div. 1992)). Nonetheless, New Jersey has a strong public policy favoring the enforcement of PSAs. Massar v.

13

Massar, 279 N.J. Super. 89, 93 (App. Div. 1995). As a result, these agreements are approached with the presumption that they are valid and enforceable, and will be enforced "if they are fair and equitable." Ibid. Indeed, "fair and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed[,]" Quinn v. Quinn, 225 N.J. 34, 44 (2016) (quoting Konzelman v. Konzelman, 158 N.J. 185, 193-94 (1999)), and "a court should not rewrite a contract or grant a better deal than that for which the parties expressly bargained." Id. at 45.

To that end, in interpreting a PSA, "courts should discern and implement the intentions of the parties[,]" and not "rewrite or revise an agreement when the intent of the parties is clear." Ibid. "[W]hen the intent of the parties is plain and the [PSA] language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Ibid. However, "[t]o the extent that there is any ambiguity in the expression of the terms of a settlement agreement, a hearing may be necessary to discern the intent of the parties at the time the agreement was entered and to implement that intent." Ibid. (citing Pacifico, 190 N.J. at 267). In making that determination, courts look to the "'language used, the situation of the parties, the attendant circumstances, and the objects the parties were striving to attain.'" Barr, 418

N.J. Super. at 32 (quoting Celanese Ltd. v. Essex Cty. Improvement Auth., 404 N.J. Super. 514, 528 (App. Div. 2009)).

Applying these principles, we are constrained to reverse the court's decision ordering plaintiff to contribute sixty percent towards college expenses because the court failed to consider and enforce the explicit term of the PSA, which was reinforced by the consent order. The PSA clearly required plaintiff "to share the cost and expense" of "college or vocational school," which he did. Inasmuch as the agreement was voluntary, knowing, and consensual, and "not the result of any fraud, duress[,] or undue influence," there were no compelling reasons to depart from the clear, unambiguous, and mutually understood terms of the PSA. See Quinn, 225 N.J. at 47 ("A narrow exception to the general rule of enforcing settlement agreements as the parties intended is the need to reform a settlement agreement due to 'unconscionability, fraud, or overreaching in the negotiations of the settlement[.]'" (alteration in original) (quoting Miller v. Miller, 160 N.J. 408, 419 (1999))).

While we are satisfied that the PSA provision regarding plaintiff's college contribution obligation obviated the need for an analysis of the issue under Newburgh, parenthetically, we note that had such an analysis been required, given the conflicting certifications of the parties, the court should have

conducted a plenary hearing rather than adjudicate the issue on the papers. "[I]n a variety of contexts, courts have opined on the impermissibility of deciding contested issues of fact on the basis of conflicting affidavits or certifications alone." State v. Pyatt, 316 N.J. Super. 46, 50 (App. Div. 1998). In particular, where the parties' certifications raise issues of fact or require credibility determinations, relief cannot be denied absent a plenary hearing. Whitfield v. Whitfield, 315 N.J. Super. 1, 12 (App. Div. 1998).

Likewise, courts have noted that litigants should be permitted oral argument of motions other than calendar matters and routine discovery applications when requested "as a matter both of due process and the appearance of due process." Filippone v. Lee, 304 N.J. Super. 301, 306 (App. Div. 1997); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 1.1 on R. 5:5-4 (2019) ("[T]here is a strong presumption favoring argument of motions other than calendar matters and routine discovery applications.").

To that end, Rule 5:5-4(a) expressly provides:

> Motions in family actions shall be governed by [Rule] 1:6-2(b) except that, in exercising its discretion as to the mode and scheduling of disposition of motions, the court shall ordinarily grant requests for oral argument on substantive and non-routine discovery motions and ordinarily deny requests for oral argument on calendar and routine discovery motions.

"The discretion afforded by Rule 5:5-4(a) is designed to give the judge 'the option of dispensing with oral argument . . . when no evidence beyond the motion papers themselves and whatever else is already in the record is necessary to a decision. In short, it is the sole purpose of these rules to dispense with what is regarded as unnecessary or unproductive advocacy.'" Palombi v. Palombi, 414 N.J. Super. 274, 285 (App. Div. 2010) (alteration in original) (quoting Fusco v. Fusco, 186 N.J. Super. 321, 328-29 (App. Div. 1982)).

However, a judge's inquiry does not end simply because the "nature of an issue presented can be labeled as pertaining to a substantive issue" or when the parties disagree on all facts. Id. at 286. "Other circumstances, such as the sufficiency of the supporting facts alleged are also relevant to the exercise of discretion. This is particularly true in the case of motions that seek a modification of financial obligations . . . because the movant must satisfy certain requirements before these motions are ripe for decision by the court." Ibid.

To be sure, the issue of emancipation is "substantive" by nature. Filippone, 304 N.J. Super. at 306. Nonetheless, plaintiff's request for oral argument was effectively denied despite the parties' widely divergent and conflicting certifications and the court's own acknowledgement that there were gaps in the record. Thus, we remand for the court to conduct oral argument,

17

and, if necessary, a plenary hearing on the issue of emancipation.[4] See Llewelyn v. Shewchuk, 440 N.J. Super. 207, 217 (App. Div. 2015) (noting "[t]he critical evaluation required for emancipation determinations typically necessitates a plenary hearing, especially 'when the submissions show there is a genuine and substantial factual dispute[,]' which the trial court must resolve" (second alteration in original) (quoting Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007))); see also Tretola v. Tretola, 389 N.J. Super. 15 (App. Div. 2006) (reversing the court's emancipation ruling because the court failed to conduct a plenary hearing and "failed to recognize there were material facts in dispute and evidence beyond the motion papers necessary for resolution of the matter").

Based on our decision, we need not address plaintiff's remaining arguments, with the following exception. Plaintiff filed a motion to suppress

---

[4] We disagree with plaintiff's contention during oral argument that if we agree he satisfied the condition in the PSA regarding his obligation to contribute to college expenses, then the child is automatically emancipated. See Newbugh, 88 N.J. at 543 (noting that despite finding "the facts did not warrant an award solely for college expenses," a court may order "continued support of son while son [was] enrolled as [a] student") (citing Jonitz v. Jonitz, 25 N.J. Super. 544, 556 (App. Div. 1953)). On the contrary, the PSA specifies that their daughter would be deemed emancipated upon the occurrence of certain events, including "completion of [four] academic years of continuous college education consisting of full[-]time attendance[.]" Thus, under the PSA, the child may not be deemed emancipated until she completes college, notwithstanding the termination of plaintiff's obligation to contribute to those expenses.

defendant's brief pursuant to <u>Rule</u> 2:6-9, arguing that the brief does not conform with the court rules. However, in light of our decision and in the interest of justice, we deny the motion.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION