**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3328-19

MARTA NINA, f/k/a
MARTA MAHOSKI,

     Plaintiff-Respondent,

v.

ALBERT MAHOSKI,

     Defendant-Appellant.

_____

     Submitted February 10, 2021 – Decided July 7, 2021

     Before Judges Sumners and Mitterhoff.

     On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0150-10.

     Albert Mahoski, appellant pro se.

     Marta Nina, respondent pro se.

PER CURIAM

     In this post-judgment matrimonial matter, defendant Albert Mahoski appeals from a Family Part order denying his request to terminate his child

support obligation and his additional claims for relief. We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

The parties were married in 1996, and had two children during the marriage: J.L., born in 1998, and J.S., born in 2001. The marriage was terminated in March 2010, by way of a Dual Final Judgment of Divorce which incorporated a Matrimonial Settlement Agreement (MSA). The MSA provided joint legal and physical custody of the children. At the time of the divorce, plaintiff Marta Nina earned an annual income of approximately $95,000 while defendant earned approximately $110,000. The parties therefore waived their rights to alimony and child support, and instead elected to split the children's expenses equally.

Under the MSA, each party is required to pay one-half of all unreimbursed medical, dental, and prescription drug expenses of the children. Any elective or non-emergent cosmetic procedure in excess of $100 must be agreed upon in advance. Every three months, the parties agreed to provide receipts for any costs which the other is obligated to contribute, and reimbursement is to be made within seven days.

Apparently anticipating defendant's unwillingness to pay, the MSA set forth the following sanction provision:

In the event [plaintiff] pre-pays for an extra-curricular activity and [defendant] does not reimburse his portion within fourteen . . . days of receiving an invoice, or if [defendant] unilaterally takes a credit he is not authorized to take . . . then [plaintiff] may file an application for enforcement of litigant's rights and, in addition to issuing an [o]rder on the matter of the extra[-]curricular activity and/or camp expense, the [c]ourt shall issue an [o]rder by which [defendant] shall become responsible to pay child support pursuant to the guidelines through the appropriate probation department. Such imposition of child support shall not trigger a recalculation of the 50/50 allocation of camp, activities[,] and unreimbursed medical expenses, as such allocation was negotiated to be an essential aspect of the child support in the best interests of the children. This provision regarding the imposition of child support without reallocating the payment of expenses as a sanction for non-payment is an essential term of this overall [a]greement and this [a]greement would not have been agreed upon without these terms. The parties further agree that no court shall have the authority to alter this sanction, which is agreed upon as being made in the best interests of the children.[1]

In July 2014, after defendant refused to undergo court-ordered therapy, a best interest evaluation was ordered to determine a custody schedule. Defendant refused to participate in the best interest evaluation. Consequently, a February 26, 2016 order granted plaintiff sole legal custody and reduced defendant's

---

[1] The MSA initially required all disputes regarding unpaid reimbursements to be resolved by an arbitrator.

parenting time to Thursday nights and every other weekend. Plaintiff also requested reimbursement in the amount of $1,519.50 for expenses related to their children's braces, driving lessons, tutoring, guitar lessons, and a summer geometry program. The judge noted defendant's history of disregarding court orders, but directed plaintiff to submit her request to arbitration, pursuant to the parties MSA.[2]

In October 2018, defendant became unemployed. He sold his house in New Jersey, purchased a new home in cash, and relocated to North Carolina in April 2019. In July 2019, defendant submitted an updated Case Information Sheet (CIS) which showed an annual income of $91,288 in 2018 and moved to terminate his support obligation under the MSA due to a change in circumstances.[3] The motion was denied as procedurally deficient because defendant failed to include proof of his income at the time of divorce. R. 5:5-4. The order indicated, however, that even if defendant had included the

_____

[2] An August 16, 2016 consent order vacated the requirement that financial disputes be decided in arbitration and, instead, ordered the parties to address expense-related disputes by motion to the court.

[3] Defendant's July 2019 CIS also showed that he paid $257,500 for the home, and had over $13,000 in a bank account, $54,000 in a cash management account, and nearly $231,000 in a retirement account.

appropriate documentation, the reduction in his annual income did not support his request to terminate his obligation to share in the children's expenses.

By this time, J.L. was attending college. Plaintiff claimed a tax credit for tuition payments she made in 2016, 2017, and 2018. In August 2019, defendant filed a motion requesting that the court order plaintiff to reimburse him for a portion of the tuition-related tax credits she claimed from 2016-2018.[4] The motion was denied without prejudice because defendant failed to provide proof of the tuition payments he allegedly made, but ordered plaintiff to provide J.L.'s 1098Ts from 2016-2018. The September 18, 2019 order noted that:

> if [d]efendant is able to provide the required proofs, he
> may be able, in a subsequent filing, to file his taxes with
> the appropriate allocation, which may result in an audit
> to [p]laintiff or need to file amended returns.

In October 2019, plaintiff moved to enforce litigant's rights based on defendant's failure to pay his portion of the children's expenses. Defendant had made only one of the five quarterly payments he was required to make from March 2018 through May 2019. The judge compared defendant's history of bad faith and blatant disregard of court orders with plaintiff's rigid compliance with

---

[4] Defendant also requested that the court order plaintiff to turn over her 2016, 2017, and 2018 tax returns, and to pay treble damages.

A-3328-19

the terms of parties' MSA. He found that plaintiff had "kept painstaking records and provide[d] ample documentation for each request for relief."

Accordingly, an October 25, 2019 order awarded plaintiff $13,283.96 in unreimbursed recreational and medical expenses, tuition payments, and fees with payment to be made within fourteen days. The order also required defendant to make all payments to plaintiff through the probation department, all tuition payments directly to the universities, and allowed plaintiff to claim both children as dependents moving forward. In light of defendant's consistent failure to make payments, the judge granted plaintiff's request to enforce the MSA's sanction provision, which required defendant to make child support payments in accordance with the child support guidelines,[5] in addition to his half of the children's expenses. Defendant was ordered to provide an updated CIS so the court could impute an income and calculate his support payments.

The updated CIS showed an income of $91,288 in 2018, and assets totaling more than $590,000. On December 4, 2019, based on defendant's updated CIS, the judge imputed an income of $800 per week and ordered him to make weekly child support payments to plaintiff of $119. In calculating the

---

[5] Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, www.gannlaw.com (2021).

support payments, the judge credited plaintiff with 365 overnights with the children per year. Twelve days later, defendant moved for reconsideration of the child support calculation. Defendant argued the judge failed to consider his current unemployment when imputing his income. He also argued that the custody schedule used to calculate the support payments was inaccurate, as the children spent time with him in November and December of 2019 and lived at college during the school year.

By the return date of the motion, defendant had not paid any of the $13,283.96 awarded to plaintiff by the October 25, 2019 order. He had also failed to pay his portion of J.S.'s tuition and had not made any contribution toward the children's expenses since June 2019.

On January 17, 2020, defendant's motion was denied. In calculating his imputed income, the judge considered defendant's current unemployment, past income, and assets. Despite defendant's contentions, the judge noted that he could have reasonably imputed a far greater income based on his current financial status. With regard to the custody schedule, the judge found that

defendant's relocation to North Carolina effectively eliminated all of his parenting time. Consequently, defendant was not credited with any overnights.[6]

On January 30, 2020, defendant mailed plaintiff a check for $8,616.66 of the $13,283.96 she was awarded by the October 25, 2019 order. In February 2020, defendant filed two motions. The first requested that plaintiff be ordered to reimburse him for the deduction she claimed in exchange for paying J.L.'s 2019 tuition, or in the alternative, to allow him to claim J.L. as a dependent on his 2019 tax return. In support of the request, defendant submitted proof of a $5,000 payment he made toward J.L.'s tuition on January 14, 2019, as well as a copy of the January 30, 2020 check. Defendant argued the September 18, 2019 order entitled him to a reimbursement now that he provided the requested proofs.

Plaintiff opposed the motion arguing defendant was not entitled to a reimbursement. She certified that she applied the $8,616.66 to defendant's outstanding recreational and medical expenses, as well as the portion of J.S.'s tuition that she paid on his behalf. Further, because he made the payment in 2020, defendant would not be able to claim the expense on his 2019 tax return.

_____

[6] In support of his reconsideration motion, defendant certified that the kids spent time at his home on certain dates. Plaintiff provided "compelling proofs" that showed defendant was untruthful in his certification.

A-3328-19

Plaintiff also noted that the January 30, 2020 check was the only payment she had received from defendant in a year.

Defendant's second motion requested the court: (1) reconsider the child support calculation and custody schedule; (2) terminate/suspend tuition payments and child support based on changed circumstances; (3) order plaintiff to turn over medical records related to a procedure J.L. required; and (4) keep his financial information confidential. In support of his motion, defendant filed another updated CIS in February 2020, which showed an income of $12,212 in 2019 and assets of more than $570,000. He also submitted prospective custody schedules outlining his parenting time under different scenarios depending on where J.S. got an internship.

Defendant argued that his prolonged unemployment was a substantial change in circumstances which required his support obligations to be terminated. Despite his best efforts to find a job, defendant averred that he had been out of work for almost a year and a half and could no longer afford to contribute to his adult children's care. He requested that the court amend the custody schedule to reflect the time the children spent at school and with him, thereby reducing the number of plaintiff's overnights.

A-3328-19

Defendant also requested that plaintiff be ordered to provide him with copies of invoices related to a medical treatment J.L. received. In 2018, J.L. was diagnosed with Keratoconus. The parties' ophthalmologist recommended a collagen drop treatment that could be performed in the office. The $4,500 procedure was not covered by the parties' medical insurance. The doctor offered an interest-free payment plan which required each parent to pay $96 a month for two years. The only alternative to the collagen drop treatment was invasive surgery which would entail a greater risk of infection, as well as a longer, more painful recovery.

Plaintiff certified that she requested preauthorization from her insurance company but was told the insurer considered the treatment experimental and therefore would not provide coverage. After defendant voiced his objection, plaintiff contacted the doctor's office and requested the billing code so she could submit the claim herself but was told no billing code existed. Plaintiff provided defendant with the doctor's contact information and invited him to pursue the appeal himself.

On March 18, 2020, both of defendant's motions were denied. The judge found that defendant had not provided any new evidence to support a change in circumstances. When imputing defendant's income and calculating the support

10

award, the court considered the financial status of both parties, including defendant's lack of employment. Based on defendant's ability to earn, net worth, repeated bad faith, and blatant disregard of court orders, the judge found no grounds to reconsider or recalculate the child support sanction.

Defendant's request to amend the custody schedule was denied because he voluntarily forfeited all of his regular parenting time when he relocated to North Carolina. When the kids are not at school, they spend the bulk of their time in plaintiff's care, and plaintiff pays for all school-related expenses which are not covered by parties' college expense agreement. The judge therefore found no basis to reduce the number of overnights plaintiff was credited by the December 4, 2019 order. Although the judge did not address the request regarding J.L.'s medical records, defendant's request to compel plaintiff to produce them was denied.

Lastly, the judge determined the September 18, 2019 order did not entitle defendant to a reimbursement or to claim their son as a dependent. The order only permitted defendant to file another request to claim the deduction, once he provided the requisite proofs. The judge considered and denied the request, based on defendant's bad faith and failure to pay plaintiff in accordance with court orders and the parties' MSA.

11

On appeal, defendant raises the following issues for our consideration:

POINT I

THE TRIAL COURT ERRED IN HOLDING THAT THE MOTION FOR [A] CHANGE IN CIRCUMSTANCE[S] WAS A RECONSIDERATION MOTION [BECAUSE DEFENDANT HAD SUBMITTED] NEW EVIDENCE[.]

POINT II

DUE TO THE LACK OF CONSIDERATION OF NEW EVIDENCE, THE TRIAL COURT ERRED IN DENYING DEFENDANT'S REQUEST TO DECREASE CHILD SUPPORT PAYMENTS[.]

POINT III

THE TRIAL COURT MADE SEVERAL INCORRECT STATEMENTS IN ITS LEGAL ANALYSIS SECTION WHICH SHOW BIAS[.]

POINT IV

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S REQUEST TO CHANGE CUSTODY ARRANGEMENTS DUE TO [A] CHANGE IN CIRCUMSTANCE[S] THROUGH CONTRADICTIONS AND APPARENT BIAS ON THE PART OF THE COURT[.]

POINT V

THE TRIAL COURT ERRED IN DENYING [DEFENDANT'S REQUEST TO BE REIMBURSED] FOR TAX CREDITS [PLAINTIFF] RECEIVED ON

BEHALF OF DEFENDANT'S COLLEGE CONTRIBUTIONS[.]

POINT VI

THE COURT ERRED IN DENYING ALTERNATIVELY TO ALLOW DEFENDANT TO CLAIM [J.L.] ON HIS 2019 TAX RETURN[.]

POINT VII

THE TRIAL COURT INEXPLICABLTY DENIED DEFENDANT'S REQUEST TO KEEP HIS FINANCIAL DATA CONFIDENTIAL[.]

POINT VIII

THE TRIAL COURT COMMITTED ERROR REGARDING REIMBURSEMENT FOR MEDICAL [EXPENSES] AND TREATED IT AS "A[LL REQUESTED RELIEF NOT ADDRESSED HEREIN.]"

We review the denial of a motion for reconsideration to determine whether the trial court abused its discretion. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). A motion for reconsideration is meant to "seek review of an order based on the evidence before the court on the initial motion . . . not to serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion record." Cap. Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (citation omitted) (citing Cummings, 295 N.J. Super at 384).

13

For these reasons, reconsideration should only be granted if "1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Cummings, 295 N.J. Super. at 384 (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401-02 (Ch. Div. 1990)). Therefore, we have held that "the magnitude of the error cited must be a game-changer for reconsideration to be appropriate." Palombi v. Palombi, 414 N.J. Super. 274, 289 (App. Div. 2010).

Our review of the Family Part's determinations involving child support is also limited. Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 587 (App. Div. 2016). "'The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence.'" Crespo v. Crespo, 395 N.J. Super. 190, 193 (App. Div. 2007) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). The reviewing court should "not disturb the factual findings and legal conclusions of the [motion] judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice.'" Catabran, 445 N.J. Super. at 587 (first alteration in

original) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

Marital agreements are contractual by nature. See Massar v. Massar, 279 N.J. Super. 89, 93 (App. Div. 1995). As is the case with other contracts, our courts value the settlement of family disputes, particularly in view of "the [interpersonal] strife and myriad factual issues that complicate judicial resolution" of such matters. Slawinski v. Nicholas, 448 N.J. Super. 25, 32 (App. Div. 2016). For that reason, as with any other contract, we will generally enforce marital agreements absent fraud or unconscionability. Ibid. (citing Quinn v. Quinn, 225 N.J. 34, 45-47 (2016)). Monetary sanctions to deter breach of a child support order may be imposed judicially, R. 5:3-7(b)(4), or by agreement of the parties. Holtham v. Lucas, 460 N.J. Super. 308, 322 (App. Div. 2019).

I.

Defendant urges that the motion judge erred in failing to consider his most recently updated CIS when deciding the March 2020 motions. He argues that his 2019 tax return, which the judge did not have when imputing defendant's income or calculating the MSA's child support sanction, is new evidence that

demonstrates a substantial change in circumstances warranting modification of his child support obligation. We disagree.

Child support orders are always subject to review and modification upon a showing of "changed circumstances." Lepis v. Lepis, 83 N.J. 139, 146 (1980) (quoting Chalmers v. Chalmers, 65 N.J. 186, 192 (1974)). Upon a motion to modify an order, "the moving party has the burden to make a prima facie showing of [the] changed circumstances warranting relief." Isaacson v. Isaacson, 348 N.J. Super. 560, 579 (App. Div. 2002). When reviewing a request for a modification based on changed circumstances, a trial judge must not review whether there has been a substantial change since the initial determination of the obligation; rather, he or she must review whether there has been a substantial change since the most recent modification. See Donnelly v. Donnelly, 405 N.J. Super 117, 127-28 (App. Div. 2009).

In assessing changed circumstances a court must typically find more than just a downward turn in economic circumstances, especially where, as here, the payor's reduced income has not substantially impacted his ability to pay. This court has previously noted that "[u]nderpinning the basis of every support order is the proposition [that] the payor has the 'ability to pay' the amount set, or agreed to." Dorfman v. Dorfman, 315 N.J. Super. 511, 516 (App. Div. 1998).

A-3328-19

Support orders may be modified upon a showing of changed circumstances, but a mere reduction in income is not dispositive on its own. A payor must show that there has been a "substantial, non-temporary change[] in [their] ability to support [themselves] or pay support." Gordon v. Rozenwald, 380 N.J. Super. 55, 67-68 (App. Div. 2005).

In this case, defendant has failed to identify any substantial change in circumstances since the October 25, 2019 order was entered. The motion judge was fully aware of defendant's financial situation, including his current unemployment, when he imputed defendant's income and calculated the resulting support obligation. Defendant now argues his 2019 tax return, which showed annual earnings of only $10,796, is new evidence the judge failed to consider when deciding his February 2020 motion to terminate child support. Defendant misconstrues the significance of his 2019 tax return. His February 2020 CIS did not provide any information that was unavailable when calculating the support award, rather, it simply supported the financial circumstances the judge considered when imputing defendant's income. Whether defendant's motion is considered one for reconsideration of the trial court's October 25, 2019 and January 17, 2020 orders, or a motion to terminate child support based on a change in circumstances, it was properly denied. We discern no new evidence

or changed circumstances warranting an alteration of defendant's support obligation during the three-and-a-half months that elapsed between the October 25, 2019 order and defendant's February 2020 motion.

Moreover, defendant's numerous CIS's illustrate that despite his prolonged unemployment, his ability to pay child support has not diminished. Defendant's July 2019 CIS showed assets totaling approximately $556,000. By September 30, 2019, his assets actually grew to more than $590,000. Defendant's February 2020 CIS reported assets of approximately $570,000. The slight reduction in defendant's assets does not support modification of the support obligation.

## II.

Defendant next argues that the motion judge unreasonably credited plaintiff with 365 overnights of parenting time in order to calculate his support payments. He criticizes the judge for rejecting his prospective custody schedule as speculative and argues plaintiff should not be credited for time the children spend at college. Again, we disagree.

Typically, a party seeking modification of an existing custody or parenting time arrangement must demonstrate a change in circumstances affecting the welfare of the children. Finamore v. Aronson, 382 N.J. Super. 514, 522-23

(App. Div. 2006); <u>Hand v. Hand</u>, 391 N.J. Super. 102, 105 (App. Div. 2007). The custody schedule included in the December 4, 2019 order, however, was calculated as an element of the sanction set forth by the parties' MSA. We therefore consider the law relevant to a court's enforcement of an MSA, rather than custody based on a child's best interests.

New Jersey "has a strong public policy favoring enforcement of [marital] agreements." <u>Massar</u>, 279 N.J. Super. at 93. Enforcement is favored because "[m]arital agreements are essential[,] consensual[,] and voluntary and as a result, they are approached with a predisposition in favor of their validity and enforceability. Marital agreements, however, are enforceable only if they are fair and equitable." <u>Ibid.</u> The New Jersey Supreme Court has indicated that "[t]he basic contractual nature of matrimonial agreements has long been recognized." <u>Pacifico v. Pacifico</u>, 190 N.J. 258, 265 (2007) (citing <u>Harrington v. Harrington</u>, 281 N.J. Super. 39, 46 (App. Div. 1995)). Just as other contractual situations, "[w]here a dispute arises as to the application of a [martial] settlement agreement, the court may apply basic principles of fairness and equity to resolve [the] ambiguities." <u>Guglielmo v. Guglielmo</u>, 253 N.J. Super. 531, 541 (App. Div. 1992).

We find no error in the judge's decision to credit plaintiff with 365 overnights for the purpose of calculating the child support sanction. Plaintiff has had sole legal custody of the children since February 2016. As of April 2019, defendant moved permanently to North Carolina and has not exercised any regular parenting time. In support of defendant's December 2019 motion to reconsider the custody schedule, he submitted a certification claiming the children were with him in North Carolina in December 2019. In response, plaintiff submitted text messages and airline tickets which the judge described as "compelling proof . . . that defendant was not truthful in his certification regarding parenting time."

In light of his untruthful representations to the court, defendant's prospective custody schedules cannot be deemed credible. Defendant has not presented any evidence that leads us to conclude the motion judge erred in awarding plaintiff full physical custody of the children. He voluntarily forfeited all of his overnights when he moved to North Carolina. The children still spend the bulk of their time in plaintiff's care, and she fronts payment for all the children's expenses. Despite the explicit terms of the parties' MSA, plaintiff has been forced to go to absurd lengths to collect reimbursement from defendant

throughout their post-marital lives. Under these circumstances, defendant's request was properly denied.

### III.

Relying on the September 18, 2019 order, defendant argues the motion judge erred in denying his request to compel plaintiff to reimburse him for the tax credit she received in exchange for making J.L.'s tuition payments in 2019. He contends the September 18, 2019 order automatically entitles him to reimbursement upon submission of the proper documentation.

Initially, we note that defendant misinterprets the September 18, 2019 order. In addition to providing the requisite proofs, the order also required him to obtain approval from the court before claiming a deduction or receiving reimbursement. Defendant has not provided any evidence to suggest that plaintiff was not entitled to the deduction she claimed. Per the parties' agreement regarding J.L.'s college expenses, defendant was to make two $5,000 tuition payments each year directly to the school, while plaintiff paid the remaining $21,000 in tuition, fees, housing, meal plan, and supplies. Paying the lion's share of J.L.'s educational expenses provides plaintiff greater entitlement to any school-related tax benefit available to the parties.

A-3328-19

Regardless, a trial court's decision in allocating child-related tax exemptions, subject to the acceptance by the Internal Revenue Service (IRS), is discretionary. Heinl v. Heinl, 287 N.J. Super. 337, 352-53 (App. Div. 1996). Plaintiff, as the parent of primary residence, meets the IRS criteria of a custodial parent.[7] Accordingly, we find no error by the trial court in allowing plaintiff to claim the deduction or denying defendant's request for reimbursement.

IV.

Defendant also argues the motion judge erred by failing to address his request to compel plaintiff to provide him with medical records in order to pursue an appeal with her insurance company. Initially, we note that this issue was decided by the October 25, 2019 order. There, the judge found that the MSA called for an equal split of the children's medical expenses, which included the Keratoconus treatment J.L. had in September 2018. Defendant was ordered to reimburse plaintiff for the portion she paid on his behalf.

Paragraph six of the parties' MSA states, in relevant part, "[t]he parties agree that they will each be equally responsible to pay one-half (1/2) of any unreimbursed or uninsured health, medical, dental or prescription drug expenses

---

[7] "[C]ustodial parent" means the parent having custody for the greater portion of the calendar year. 26 U.S.C. § 152(e)(4)(A).

for the children." (Emphasis added). The MSA clearly calls for an equal split of uninsured medical expenses. Plaintiff made reasonable efforts to pursue insurance coverage for the procedure but was informed by both the health care provider and the insurer that the expense would not be covered. As required by the MSA, plaintiff provided defendant with receipts supporting the expense. In the October 25, 2019 order, the judge found the medical expenses plaintiff submitted were not excessive or made in bad faith, but rather "the expenses of two intelligent teenagers." Under those circumstances, we find no error in the judge's decision to deny defendant's request to compel plaintiff to provide him with the subject medical records.

With regard to defendant's request to keep his financial information confidential, we vacate only the portion of the March 18, 2020 order denying that request, and remand the matter for the limited purpose of correcting the apparent oversight. To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, vacated in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION